Violation of Alabama Uniform Controlled Substances Act; sentence: fifteen years' imprisonment.
The appellant was tried and convicted for the July 19, 1980, possession of marijuana. The appellant was driving on Fayette County Road 12 when he was stopped by Fayette County Deputy Sheriff Arnold Strickland and Auxiliary Deputy Philip Donilson[1]
for *Page 350 
having an excessively loud exhaust system on his car. After stopping the appellant, Deputy Strickland saw a .357 caliber Smith Wesson revolver protruding from under the driver's seat. He retrieved and unloaded it and asked the appellant for his pistol permit. The appellant replied that he did not have one, and he was arrested for carrying a concealed weapon without a permit. A more complete rendition of the facts is unnecessary as issues concerning an inculpatory statement made by the appellant and the search of his automobile are dispositive of his cause.
 I
The appellant moved to suppress the admission of his statement on the ground that it was involuntarily made without first being given the Miranda warning. By stipulation both parties agreed that the testimony recorded at the appellant's preliminary hearing would be adopted as that for the motion to suppress. The trial court denied the motion.
At the preliminary hearing Deputy Strickland testified that after the appellant could not produce a permit for the pistol he arrested him and asked if he would mind opening the trunk of his car. Appellant refused. From the record:
 "A . . . I believe I arrested him at that time for carrying a concealed weapon and asked him if he would mind opening his trunk.
"Q. What did he say?
"A. To start off with, `no.'
 "Q. Did you have any other conversations with him about opening the trunk?
 "A. Yes, sir, I did. I advised him if he didn't have anything to hide back there, didn't have anything in there, he wouldn't mind opening the trunk for me. At this time he got very fidgety. He asked if we could give him a break — assuming he was referring to the gun.
 "I asked him once again would he open the trunk. Then he said he had something back there that he didn't want us to see. I advised him that I had a gut feeling that he might have something else back there.
. . . .
"Q. Tell us what you said and what he said.
 "A. I told him if he didn't have anything to hide, he would open the trunk.
"Q. I understand that, but after that.
 "A. He advised that he had something back there that he didn't want us to see. I advised him if it were necessary, I could get a search warrant to get into the vehicle. At that time we turned him around to pat him down, and I asked him again would he mind opening the trunk. He said, `Well, to be honest with you, I have got grass back there.'
 "So I asked him would he give me the key, which he did at that time. When he gave me the key, I cuffed him and placed him in my car. I came back to his vehicle, opened the trunk, and there was a large green garbage bag in there which was tied up at the top. I opened the bag and there were several smaller bags with a substance in there that appeared to be marijuana."
Deputy Strickland testified that he searched and arrested the appellant prior to his making the inculpatory statement. The search revealed no illegal substance upon the person of the appellant. It appears that after he surrendered his car keys the appellant was then handcuffed and placed in the patrol car. The appellant was never apprised of his Miranda rights at the scene.
After arresting the appellant Deputy Strickland opened and inspected the trunk of appellant's car. Afterward he transported the appellant to the county jail, with Deputy Donilson driving the appellant's car. They met Investigator Harold Pendley who had previously been contacted by Deputy Donilson. He inspected the contents of a garbage bag removed from the appellant's trunk. Deputy Strickland stated that the appellant was given his Miranda rights by Investigator Pendley about ten minutes after his arrival at the jail although Strickland did not administer or witness such. *Page 351 
Deputy Donilson testified that he and Deputy Strickland asked the appellant several times for permission to open the trunk, but the appellant refused. We quote from the record:
 "A. At the time of the arrest, Officer Strickland asked Jimmy to open the trunk. Jimmy says, `No.' He asked him, he said, `Well, you're not going to open the trunk for us?' He said `No.' So, Officer Strickland said, `Well, we can get a warrant and open the trunk that way, if you want it that way. It doesn't matter.'
 "At that time, I told Jimmy, I said, `Well, we're going to see in it sooner or later, so why not let us see in it? And he said, `No! At that time Arnold said, `Well, I'm placing you under arrest for carrying a concealed weapon.' And he asked Jimmy to face the car.
 "As Arnold was frisking or searching Jimmy, Jimmy said, `Well, I'll let you see in my car.' He said, `I got a little grass back there.'"
Deputy Donilson corroborated the substance of Deputy Strickland's testimony although their testimony was in conflict on some points. Donilson testified that two requests were made of the appellant for permission to open the trunk prior to his arrest. He stated that his request was made after the appellant's arrest and that neither he nor Deputy Strickland advised the appellant of his Miranda rights at the scene.
The Miranda rule[2] clearly demands that the State may not use statements, whether inculpatory or exculpatory, stemming from a "custodial interrogation" of an accused unless it proves that the Miranda warnings were given to the accused prior to questioning. Extrajudicial confessions are prima facie
involuntary and inadmissible, and the burden imposed upon the State is to prove that the accused "knowingly and intelligently waived his privilege against self-incrimination" to the satisfaction of the trial judge whose finding will not be disturbed on appeal unless it is contrary to the great weight of the evidence or is manifestly wrong. Miranda,384 U.S. at 475, 86 S.Ct. at 1628; Harrison v. State, Ala., 358 So.2d 763
(1978); Garrison v. State, Ala.Cr.App., 372 So.2d 55 (1979);Barnett v. State, Ala.Cr.App., 348 So.2d 512 (1977).
"Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444,86 S.Ct. at 1612. "Interrogation" has been defined as "police questioning or conduct which is calculated to, expected to, or likely to evoke admissions." Romine v. State, Ala.Cr.App.,384 So.2d 1185, cert. denied, Ala., 384 So.2d 1188 (1980), citingCom. v. Whitman, 252 Pa. Super. 66, 380 A.2d 1284 (1977). Such conduct need not occur at a police station or headquarters in order to be custodial. Orozco v. Texas, 394 U.S. 324,89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Chavez-Raya v. ImmigrationNaturalization Service, 519 F.2d 397 (7th Cir. 1975); State v.Amorin, Hawaii, 604 P.2d 45 (1979).
The Miranda warning is required only where there has been such a restriction on a person's freedom as to render him "in custody." Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711,50 L.Ed.2d 714 (1977). It is inapplicable to traditional investigatory functions as general on-the-scene questioning.United States v. Montos, 421 F.2d 215 (5th Cir. 1970), cert. denied, 307 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. The test in determining the existence of a custodial interrogation has been defined as whether a reasonable man would feel that he was physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action is restricted by such interrogation.State v. Hatton, 116 Ariz. 142, 586 P.2d 1040 (1977);Commonwealth v. Brown, 473 Pa. 562, 375 A.2d 1260 (1977).
The line of demarcation between a general investigation and a custodial interrogation *Page 352 
must be determined by a case-by-case factual analysis. Brown v.Beto, 468 F.2d 1284 (5th Cir. 1972). Criteria used to determine the necessity of Miranda safeguards include: (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the accused, and (4) focus of the investigation.Montos, supra. While the focus of the investigation is especially important in deciding whether an accused should be given the Miranda warning, it is custody and not focus which marks the point at which it becomes mandatory. Mathiason,supra; Harris v. State, Ala.Cr.App., 376 So.2d 773, cert. denied, Ala., 376 So.2d 778 (1979).
In the instant case there can be no doubt that the appellant was in custody at the time of his interrogation. He had been initially stopped for a motor vehicle violation and, shortly thereafter, arrested for carrying a concealed weapon. He was questioned concerning the opening of his car trunk before and after his arrest; a matter which was wholly and totally unrelated to his initial stop and subsequent arrest. The appellant was searched prior to the making of his incriminating statement and afterward handcuffed and placed in a patrol car. After the search of his car trunk and his transportation to the county jail, the appellant was apparently given the Miranda
warning about ten minutes after his arrival although there is no direct testimony to support such a conclusion. Deputy Strickland only stated that he was told that the Miranda
warning had been given.
The mandate of Miranda is clear in that in a situation as that sub judice the appellant should be apprised of his constitutional rights and safeguards prior to any questioning. Without such, his inculpatory statement is prima facie
involuntary and inadmissible. Wallace v. State, 290 Ala. 201,275 So.2d 634 (1973). Thus, the trial court erred in denying the appellant's motion to suppress his statement. Garrison;Barnett, supra.
The subjective effect upon the appellant of the statements made by the deputies before his arrest can only be viewed impliedly, if not expressly, as coercive in nature. They were calculated, likely, or expected to evoke a response detrimental to the appellant. Rhode Island v. Innis, 446 U.S. 291,100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
 II
Because the search in the instant case was conducted without a warrant issued upon probable cause, it can pass constitutional muster only if it is shown that it falls within one or more of the exceptions to the warrant requirement set out in Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). The burden is on the State to make such a showing. Coolidge v.New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564
(1971). Murray v. State, Ala.Cr.App., 396 So.2d 125, cert. denied, Ala., 396 So.2d 132 (1980); Rueffert v. State,46 Ala. App. 36, 237 So.2d 520 (1970).
The only exceptions to the warrant requirement which the facts in the instant case would remotely suggest would be (1) where exigent circumstances exist coincidental with probable cause per Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975,26 L.Ed.2d 419 (1970), or (2) with consent, voluntarily, intelligently and knowingly given, per Bumper v. NorthCarolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019,82 L.Ed. 1461 (1938).
We conclude that at the time the officers began seeking permission to open the trunk neither probable cause nor exigent circumstances existed. Neither the minor infraction of driving with an improper muffler nor the infraction of possessing a pistol in an automobile without a permit would give rise to probable cause to believe that contraband was in the trunk of the appellant's automobile. The officer's "gut feeling" that the appellant "might have something" in the trunk is hardly sufficient to establish probable cause. Likewise, exigent circumstances did not exist at the time the officers began questioning the appellant concerning the trunk of his automobile. *Page 353 
Neither the appellant nor his automobile were mobile at that time. The appellant was in custody outside of his car.
The evidence in the instant case likewise fails to meet the standard required to affirmatively establish consent to search. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v.North Carolina, supra; Schneckloth v. Bustamonte, 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Clear and convincing evidence of waiver is required, and the burden of proving waiver is on the State as the party claiming it. Rueffert,supra.
The failure to inform the accused of his right to refuse to consent is a factor to consider in determining voluntariness, but it is not to be given controlling significance. Weatherfordv. State, Ala.Cr.App., 369 So.2d 863, cert. denied, Ala.,369 So.2d 873 (1979). The State must prove that there was no duress or coercion, express or implied. "The consent must be unequivocal and specific, and freely and intelligently given. There must be clear and positive testimony." Hardy v. State,53 Ala. App. 75, 78, 297 So.2d 399 (1974). Courts indulge in every reasonable presumption against waiver of fundamental Fourth Amendment rights. Duncan v. State, 278 Ala. 145, 176 So.2d 840
(1965). It has been held that a peaceful submission to a search or seizure is not a consent or an invitation to the search, but is "merely a demonstration of regard for the supremacy of the law." Knox v. State, 42 Ala. App. 578, 582, 172 So.2d 787
(1964).
In Murray v. State, supra, we held consent to search the defendant's car to have been involuntarily given. There the appellant was stopped on a highway without probable cause pursuant to an anonymous telephone tip. A deputy sheriff asked Murray if he could search the car and was told, "I would rather you wouldn't." Nevertheless, the deputy walked to the driver's side of the car to take the keys from the ignition. He observed a large dog in the back seat and inquired whether the dog would bite. Murray stated that the dog would and then reached in the car himself, removed the keys, and handed them to the deputy. Forty pounds of marijuana was found in the trunk of the car. It was apparent from the record in the Murray case that the officers were going to search the car with or without the appellant's consent and that the appellant removed the keys from the car for the officers to prevent one of them from being bitten or to prevent injury to his dog.
In Murray, supra, we cited Henderson v. State, 49 Ala. App. 275, 270 So.2d 822 (1972). In that case this court held that a mere showing that an accused gave officers the keys to her car upon their request was insufficient to show a voluntary waiver of her Fourth Amendment rights.
In Henderson, supra, at 277, 270 So.2d 822, this court stated:
 "When the State relies upon consent to justify a search and seizure of evidence to incriminate, the consent must be given under circumstances to justify a waiver of known rights. This is not a matter that can be presumed, but the State had the burden of proving that the consent or waiver was given voluntarily without inducement or coercion and with knowledge of the right to refuse the request to search. . . ." (Citations omitted.)
This court in Whitener v. State, Ala.Cr.App., 390 So.2d 1136, cert. denied, Ala., 390 So.2d 1145 (1980), and in Herriott v.State, Ala.Cr.App., 337 So.2d 165, cert. denied, Ala.,337 So.2d 171 (1976), held consent to search to be involuntarily given where it was based upon an officer's threat to obtain a search warrant where no probable cause existed at the time. The record in the instant case reveals that after the appellant had refused several requests to allow the officers to search the trunk of his car, Deputy Strickland stated, "I advised him if it were necessary I could get a search warrant to get into the vehicle." The officers began to "pat him down" and again asked him would he mind opening the *Page 354 
trunk, at which time he made his incriminatory statement and gave the officers the keys to the automobile. It is apparent that the appellant was submitting rather than consenting to the search. In Herriott, supra, we noted:
 "We must, we find, be guided by the holding in Bumper
that a consent which is actually simple acquiescence to lawful authority is not voluntary and, when the defendant is in custody, by the concern expressed in Schneckloth that `in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.'"
Consequently, the appellant's motion to suppress should have been granted.
REVERSED AND REMANDED.
All the Judges concur.
[1] Spelled "Phil Donaldson" in the preliminary hearing record, but referring to the same individual.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).