**UNITED STATES**

v.

**Vernon L. MILLER.**

**Crim. No. 83–175.**

United States District Court,
W.D. Pennsylvania,
Pittsburgh Division.

May 18, 1984.

James A. Villanova, Houston, Harbaugh, Sharlock, Repcheck & Lippard, Pittsburgh, Pa., for Miller.

Sandra D. Jordan, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

## OPINION

SIMMONS, District Judge.

This matter is presently before this Court on the defendant's, Vernon L. Miller, motion to suppress oral statements and tangible evidence given by the defendant to agents of the Internal Revenue Service. The defendant alleges that evidence in this case was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Fifth Amendment of the United States Constitution.

The defendant also seeks to interview certain IRS agents. Both the suppression motion and the discovery motion are denied.

## I

### Background.

In a four count indictment the defendant, Vernon L. Miller, and his spouse, Janice D. Miller,[1] were charged with attempted tax evasion. Vernon Miller is the owner and sole proprietor of Vernon L. Miller Drafting Company, a proprietorship which provides detailed designed drawings to steel fabricating companies. Janice Miller is the bookkeeper for the drafting business. The indictment charges that the Millers knowingly filed fraudulent joint federal income tax returns, understating their actual federal income tax for the taxable years 1979 through 1980. An evidentiary hearing was held on the defendant's suppression motion.

defendant's suppression motion.

The evidence at the suppression hearing established that on March 2, 1982, two Special Agents from the Criminal Division of the Internal Revenue Service visited Vernon L. Miller at his home. The agents properly identified themselves, displayed their credentials and explained to Mr. Miller that they were investigating the Millers' federal income tax liability. At that time, one of the agents read Mr. Miller his rights from a printed card.[2] Mr. Miller acknowledged that he understood his rights. The defendant then showed the agents several business records and answered related questions. During the interview, several

---

**1.** Following an evidentiary hearing on the mental and physical health of Janice Miller, this Court determined that Janice Miller's health was so poor as to render her incapable of effectively aiding in her defense and hence unfit to presently stand trial. The case against Vernon Miller and Janice Miller has been severed and the government is now proceeding against Vernon Miller alone.

**2.** The printed card contained the following language:

As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses.

Under the Fifth Amendment to the Constitution of the United States, I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you may say and any information which you submit may be used against you in any criminal proceeding which may be undertaken.

I advise you further that you may, if you wish, seek assistance of an attorney before responding.

of the answers given by Mr. Miller indicated that Mrs. Miller was primarily involved in the bookkeeping aspects of the proprietorship. At the request of the agents, Mrs. Miller was summoned from a separate area of the house. Mrs. Miller's rights were also read from the printed card; she too acknowledged her understanding and answered the agents questions. The entire interview lasted approximately three hours. The agents described the interview as "relaxed" and noted that the "Millers were polite." At no time were the Millers placed under arrest.

Prior to the conclusion of the interview, the agents requested that the Millers permit the agents to inspect and photocopy their business records. Mr. Miller supplied the agents with certain records and obtained a receipt for the same. On March 15, 1982, Mr. Miller telephoned the agents to inform the agents that they could obtain additional records if the Millers' records were returned that same day. The agents agreed; the Millers' records were obtained, photocopied and returned the same day. On May 12, 1982, Mr. Miller telephoned the agents requesting that they return the records he had given them at the March 2, 1982, interview. The records were returned and the defendant signed a receipt acknowledging their return.

On July 29, 1982, two special IRS agents again interviewed the Millers at their home. The Millers were interviewed for approximately one hour. The Millers answered questions, but refused to review a check spread prepared by the agents, believing it unnecessary to do so because the Millers had previously supplied the agents with their cancelled checks and related background information.

A few days later, the agents telephoned Mr. Miller to make another appointment for an interview and for the Millers to review the check spread. Mr. Miller again reiterated his unwillingness to review a check spread, but scheduled an interview for August 11, 1982. The Millers later cancelled this appointment because they were not prepared to meet with the agents.

Another appointment was scheduled. Later that month, the agents called upon the Millers at their residence. At that time, the Millers refused to meet with the agents because the Millers were hosting a couple from Haiti and did not have the time to be interviewed.

The following month, Mr. Miller telephoned the agents to reschedule the cancelled interview. Afterwards, the agents met with the Millers on September 20, 1982, and reviewed their business records. The agents final contact with the Millers occurred on November 5, 1982. On that day, the agents visited the Millers' home to obtain the Millers' consent to extend the statute of limitation for the taxable years 1977 and 1978. The Millers refused to give their consent and refused to sign the consent form. The final visit lasted approximately fifteen minutes.

After the March 2, 1982, interview, the Millers were never advised of their constitutional rights. At no time during the IRS investigation were the Millers arrested or taken to the police station. In addition, all interviews with the Millers were conducted at the Millers' residence.

The defendant's motion to suppress raises two issues: (1) whether the Millers should have been given full *Miranda* warnings before their interviews with IRS agents and (2) whether the statements and tangible evidence given the IRS agents by the Millers were involuntarily obtained so as to constitute an independent violation of the defendant's Fifth Amendment privilege against compulsory self-incrimination. The short answers are no to both questions.

## II.

### The Miranda Issue.

■ The applicability of *Miranda* warnings to the circumstances of this case does not require protracted analysis. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a suspect must be warned of his constitutional rights when "taken into custody or otherwise deprived

of his freedom in some significant way." Courts are barred from admitting into evidence at trial, statements or other evidence stemming from the custodial interrogation of an uninformed suspect. Following *Miranda*, the Supreme Court has repeatedly declared that *Miranda* warnings are required only when a defendant is subject to "custodial interrogation". *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976); *Orozco v. Texas*, 394 U.S. 324, 326–27, 89 S.Ct. 1095, 1096–97, 22 L.Ed.2d 311 (1969); *Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1504, 20 L.Ed.2d 381 (1968).

The record in this case establishes that the Millers were never formally arrested. This much the defendant concedes. The defendant argues, however, that the compulsive circumstances surrounding the interviews conducted by the IRS agents in this case required the agents to administer *Miranda* warnings to the Millers. To be sure, there is ample authority to support the proposition that compulsive circumstances surrounding an interrogation, although no formal arrest is made, may amount to the functional equivalent of an in-custody interrogation. *Accord Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); *United States v. Semkiw*, 712 F.2d 891 (3d Cir.1983); *Steigler v. Anderson*, 496 F.2d 793 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

■ Several courts have recognized that custodial interrogation is not limited to circumstances involving a formal arrest, but may occur any time a suspect is psychologically restrained by a "police-dominated atmosphere" in "custodial surroundings". Custodial interrogation may occur outside the police station. Equally true, a custodial interrogation does not necessarily ensue because a suspect is questioned at the police station. *Cf. Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969),

with, *Yount v. Patton*, 710 F.2d 956 (3d Cir.1983). Thus, it is not custody per se, but "the *custodial* nature of the interrogation which triggers the necessity for adherence to the specific requirements of the *Miranda* holding." *Beckwith*, 425 U.S. at 346, 96 S.Ct. at 1616 (emphasis in original). *Accord Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

■ The question of whether a suspect is "in custody" must be made on a case-by-case basis. *Patterson v. Cuyler*, 729 F.2d 925 at 930 (3d Cir.1984). *State v. Mesa*, 638 F.2d 582, 584 (3d Cir.1980). Absent a formal arrest, to determine whether a suspect is in custody, courts are required to use the objective standard of whether the government has in some meaningful manner imposed a significant restraint on a suspect's freedom of action. *See Yount v. Patton*, 710 F.2d 956, 961 (3d Cir.1983); *Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

■ At the evidentiary hearing, Mr. Miller testified that he felt restrained by the IRS agents' presence in his home and that he did not believe that the agents would have left his home had he refused to answer their questions; nor did he believe he was free to do so. Mr. Miller recited several incidents reported in the media regarding the abuse suffered by people who had refused to comply with government officials. For these reasons, the defendant argues that his freedom of movement was psychologically restrained by the presence of IRS agents in his home. The record in this case, however, does not support the compulsive circumstances which the *Miranda* court found so inherently coercive as to require its holding.

The testimony at the suppression hearing established that the Millers were never placed under arrest or taken to the police station. All of the interviews occurred at the Millers' home. The IRS agents described the interviews as "relaxed" and noted that "the Millers were polite." This evi-

dence was uncontradicted. Moreover, Mr. Miller testified that the agents never threatened him in any manner and that when read his rights by the agents, he understood them. The agents specifically informed Mr. Miller that he could not be compelled to answer any questions or to submit any information against his will. *See supra* note 2. Also, of great significance, on one occasion the Millers refused to be interviewed by IRS agents because they were entertaining guests when the agents arrived at the Millers' home. The evidence shows that the agents freely left the Millers' home. This evidence belies the defendant's assertion that the agents would not have left his home had they been asked to do so; it is also inconsistent with the defendant's misapprehensions regarding his freedom of actions.

Furthermore, the facts of this case are remarkably similar to those in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), where the Supreme Court held that statements made by a taxpayer during the course of a noncustodial interview were admissible against him in an ensuing criminal prosecution, although the taxpayer was not given his full *Miranda* warnings. Notably, the taxpayer's rights in *Beckwith* were read from a printed card identical in substance to the printed card read to the Millers in this case. Like the taxpayer in *Beckwith*, the Millers acknowledged that they understood their rights, were not arrested and voluntarily supplied information to IRS agents. In view of these similarities, this Court can find no discernible reason why a result different from that in the *Beckwith* case should obtain in this case.

In sum, the record in this case is devoid of any evidence that the Millers were deprived of their freedom in any significant manner. Therefore, this Court holds that the Millers were not entitled to *Miranda* warnings under these noncustodial circumstances and that the agents failure to administer *Miranda* warnings provides no basis for the suppression of evidence in this case.

## III.

### The Voluntariness Issue.

Although this Court holds that *Miranda* warnings were not required under the noncustodial circumstances of this case, this Court must still determine whether the statements and other tangible evidence given by the Millers were involuntarily obtained so as to constitute an independent violation of the defendant's Fifth Amendment privilege against compulsory self-incrimination. In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the Supreme Court recognized that a "non custodial interrogation might possibly in some situations, by virtue of special circumstances, be characterized as one where 'the behavior of ... law enforcement officials was such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined....'" *Id.* at 347–48, 96 S.Ct. at 1616–17, *citing, Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961).

The critical inquiry in this instance is whether, in conducting the interviews and the investigation, the IRS agents overreached the Millers—either by intimidating, coercing or misleading the Millers, by discouraging the Millers from exercising their constitutional rights, or by making false promises in exchange for the Millers' cooperation. The record in this case shows no evidence of overreaching. The uncontradicted testimony establishes that the interviews were not conducted in a manner so as to overbear the Millers' free will and that the statements made and the tangible evidence supplied by the Millers were voluntarily given.

The government has clearly established that the interviews took place in a coercive free environment. All of the interviews were conducted at the Millers' home. During most of the sessions both Millers were present. The Millers were separately read their rights from a printed card and both respectively acknowledged that they understood their rights. At some points during

the IRS investigation, the Millers refused to be interviewed and to review a check spread and at other times they fully cooperated. Records requested by the agents were freely given, but only on Mr. Miller's terms and conditions. When requested to return records, the IRS agents promptly did so. Against this backdrop of voluntary and mutual cooperation, this Court must hold that the statements and tangible objects given to the IRS agents by the Millers were freely self-determined.

Since this Court finds no basis to suppress the statements or tangible objects, the defendant's motion to suppress is denied.

## IV.

### Motion To Interview Agents.

█ The defendant's discovery motion to interview employees of the Internal Revenue Service is without legal basis and is accordingly denied. There is no support for such sweeping discovery under the Federal Rules of Criminal Procedure, Fed.R. Crim.P. 16, the *Jencks* decision, *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), or the Jencks Act, 18 U.S.C. § 3500 (1957 & Supp.1984).

The extent to which pretrial discovery should be permitted in criminal cases has been explored in great detail in recent years. Much of the debate has centered on the discovery, prior to trial, of the name of witnesses to be called by the government. The principal argument against disclosure of the identity of a witness prior to trial has been the danger that disclosure poses to the potential witness—physical harm or threats designed to make the witness unavailable or to influence him to change his testimony. *See* Fed.R.Crim.P. 16 advisory committee note. Notably, under the Jencks Act, statements or reports of prospective government witnesses are not subject to "subpena [sic], discovery, or inspection *until*" after the witness has testified on direct examination in the trial of a case. Jencks Act, 18 U.S.C. § 3500(a) (1957 & Supp.1984) (emphasis added).

The reluctance to extend discovery to witnesses and their testimony, prior to trial, is clearly reflected in both the Federal Rules of Criminal Procedure and the Jencks Act. The discovery the defendant proposes in this case goes well beyond the scope of discovery presently permissible in criminal cases. To permit the defendant to interview IRS agents in this case would amount to judicial legislation and would seriously undermine the limitations on the scope of criminal discovery inherent in both the Federal Rules of Criminal Procedure and the Jencks Act. Accordingly, the defendant's motion to interview IRS agents is denied. An appropriate order follows.

### ORDER

AND NOW, to wit, this 18th day of May, 1984, after consideration of the evidence, arguments and briefs in the above-captioned case and for the reasons set forth in the accompanying Opinion, it is ORDERED, ADJUDGED, and DECREED, that Vernon L. Miller's Motion to Suppress Statements and Tangible Evidence and Motion to Interview IRS Agents are hereby denied.