ON RETURN TO REMAND
This cause was remanded for the trial court to determine whether Brian Leonard Smolder, the appellant, was indigent, and, if the court determined that the appellant was indigent, to appoint counsel to represent the appellant unless the appellant makes a voluntary, knowing, and intelligent waiver of counsel on the record or waives his right to appeal. The trial court, having complied with those instructions, conducted a hearing, found the appellant indigent, and appointed an attorney to represent him on appeal.
Appointed counsel has now filed an appellate brief with this court in which he argues that the trial court erred in denying the appellant's motion to suppress his statement and the physical evidence seized as a result of that statement. Specifically, he argues that the circumstances surrounding the questioning of the appellant by law enforcement officers were indistinguishable from an "arrest," and that there was no probable cause to arrest the appellant when he was questioned. Therefore, he argues the appellant was illegally detained and any incriminating statements he made and the physical evidence collected as a result of those statements were the fruit of that illegal detention and inadmissible.
The evidence presented at the suppression hearing included the following: Sergeant J.T. Scott of the Montgomery Police Department testified that, on December 11, 1992, Officer Mike Harris informed him that he had placed a telephone call to Colonial Coins, a pawnshop located in Montgomery, in connection with the investigation of recent silver burglaries in the area. Sergeant Scott testified that Officer Harris informed him that when he telephoned the pawnshop, he had been told by the owner that the appellant, who had pawned silver flatware on a prior occasion, was in the store at the time, attempting to pawn more silver flatware. Sergeant Scott testified that he radioed and dispatched Detective J.D. McQueen to the pawnshop in an attempt to "see who had the silver." He further testified that he directed Detective McQueen to obtain any pertinent information from the appellant "if he would voluntarily give it, or if he would voluntarily come to headquarters, to do that." He testified that he sent two uniformed police officers to the scene. He testified that when he dispatched the officers he did not consider the appellant to be a "suspect," although he considered the sale of the silver to be suspicious. Sergeant Scott testified that he reiterated to Detective McQueen that he was to bring the appellant to police headquarters only if he would come voluntarily. He testified that he did not specify to Detective McQueen whether the appellant should ride in the police vehicle or in his own car.
Detective McQueen testified that he was dispatched to the Colonial Coins pawnshop regarding a sale of a large quantity of silverware flatware. He testified that, when he and another officer arrived at the pawnshop, two uniformed officers were present. He testified that, upon entering the pawnshop, he telephoned Sergeant Scott, who instructed him to determine whether the appellant would voluntarily accompany them to the police station for questioning regarding recent silver burglaries. He testified that Sergeant *Page 759 
Scott instructed him that, if the appellant would not go to the police station, he was to obtain a "good field interview." He testified that this conversation was within the hearing distance of the appellant. Detective McQueen testified that after he hung up the telephone, he approached the appellant, who was attempting to sell silver flatware. He testified that he asked the appellant if he would mind accompanying him to police headquarters to discuss the history of the silver he was attempting to sell. The appellant then took the silver and placed it in his car. He testified that the appellant said, "I assume you want me to go with you," to which he replied, "If you don't mind, I'd like for you to ride with me." He further testified that, although he considered the appellant to be a suspect in criminal activity, he did not feel there was probable cause for an arrest at that time. He further testified that the appellant then voluntarily consented to ride with him to the police station. He testified that neither he nor his partner coerced or threatened the appellant in any way to accompany them. Additionally, he testified that he never told the appellant that he was not free to leave. He testified that when they reached the police station, the appellant was escorted to the department's "pawnshop office." He testified that the appellant was left alone for approximately 10 minutes while a license check was conducted on the appellant's vehicle. McQueen testified that he was present when questioning began and that the appellant was questioned regarding the silver flatware. He testified that the appellant stated that he had no receipts for the silver because he had inherited it from his father, who was deceased. He testified that another officer asked the appellant for his mother's telephone number so that the story could be verified. He testified that the appellant, when told it would be necessary to telephone his mother, changed his story and told the officers that he bought the silver from a black male named "Cat" in a shopping mall in either Biloxi or Ocean Springs, Mississippi. Detective McQueen testified that he asked the appellant whether he thought there was something suspicious about the sale and the appellant answered affirmatively. He testified that immediately thereafter the appellant was advised of his Miranda rights. He testified that from that point onward, the questioning changed from an "inquisitive interview" to an interrogation. The appellant voluntarily signed a waiver of rights form. He testified that, when the other officers left the room to check on any recent silver burglaries in the Biloxi and Ocean Springs area, he again advised the appellant of his Miranda rights. Detective McQueen stated that the appellant then admitted that he would go into stores, "case" the stores, and pick out various items that he wanted "Cat" to steal for him. He testified that the appellant told him that "Cat" would then burglarize the store and contact the appellant when had completed the job. He would then meet "Cat" on a pier in Ocean Springs and purchase the stolen items. He testified that, after the 30-minute interview was completed, verification was received that two antique stores in the Ocean Springs area had been burglarized and had reported missing various items of silver, which included silver flatware. The appellant was then arrested.
The appellant gave conflicting testimony. He testified that he was at Colonial Coins pawnshop attempting to sell silver when two uniformed police officers asked him to step outside. He testified that he asked the officers if he could go inside to complete his transaction and they allowed him to do so. He testified that he never felt free to leave. He testified that the uniformed officers stood by the door until Detective McQueen arrived about 10 minutes later. He testified that he felt that he had no choice but to accompany Detective McQueen to the station, and that had he felt that he had been free to leave the station at any time, he would have driven his own car. He testified that, when he arrived at the station, the police accused him of lying and told him "if you don't tell the truth it is going to get worse for you, downhill." He testified that, up to that point, no one had advised him of his rights. He testified that he was at all times afraid of the police and what they might do if he did not tell them what they wanted to hear.
"Miranda warnings are not necessarily required to be given to everyone *Page 760 
whom the police question. Oregon v. Mathiason, 429 U.S. 492,97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir. 1985); Primm v. State, 473 So.2d 1149, 1158
(Ala.Crim.App.), cert. denied, 473 So.2d 1149 (Ala. 1985). 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Miranda [v. Arizona], supra, 384 U.S. [436] at 444, 86 S.Ct. [1602] at 1612 [16 L.Ed.2d 694].
"There is a distinction which must be made between general interrogation and custodial interrogation sinceMiranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State,366 So.2d 1145, 1148 (Ala.Crim.App. 1979); Primm. supra, at 1158;Johnston v. State, 455 So.2d 152, 156 (Ala.Crim.App.) cert. denied, 455 So.2d 152 (Ala. 1984). This distinction should be made on a case-by-case basis after examining all of the surrounding circumstances. United States v. Miller,587 F. Supp. 1296, 1299 (W.D.Pa. 1984); Johnston, supra, at 156;Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App. 1984);Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App. 1981);Kelley, supra at 1149.
"The United States Supreme Court in California v. Beheler,463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) articulated 'the standard by which "custody" is to be judged.'Davis, supra at 171. In its opinion, the Supreme Court stated that 'although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' California Beheler, supra, 463 U.S. at 1125,103 S.Ct. at 3519-20 (quoting Mathiason, supra,429 U.S. at 495, 97 S.Ct. at 714). See also Primm, supra, at 1158.
"A determination of 'custody' is not based on 'the subjective evaluation of the situation by the defendant or the police officers.' Davis, supra at 171. Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect's freedom of action has been restricted by the police in any significant manner. Davis, supra at 171;Miller, supra at 1299; Warrick, supra at 322; Hall, supra at 351. 'The only relevant inquiry is how a reasonable man in the suspect's position would have understood his position.' UnitedStates v. Jonas, 786 F.2d 1019, 1022 (11th Cir. 1986) (quotingBerkemer v. McCarty, 468 U.S. 420 [442], 104 S.Ct. 3138, 3152,82 L.Ed.2d 317 (1984)).
 " 'Pertinent factors to be considered include (1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual. United States v. Crisco, 725 F.2d 1228, 1231 (9th Cir.), cert. denied, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); [U.S. v.] Booth, 669 F.2d [1231] at 1235 [9th Cir. 1981] United States v. Curtis, 568 F.2d 643, 646 (9th Cir. 1978).'
 "United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985)."
Hooks v. State, 534 So.2d 329, 347-348 (Ala.Cr.App. 1987), cert. denied 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989).
Additionally, in Banks v. State, 570 So.2d 1282, 1284
(Ala.Cr.App. 1990), this court stated:
 "The standard of review to be applied in cases of this nature was set out in Finch v. State, 518 So.2d 864, 871 (Ala.Cr.App. 1987), cert. denied
(Ala. 1988):
 " 'The question of whether a suspect has been subjected to custodial interrogation requiring Miranda warnings is "not an easy one," and the trial court's findings on conflicting evidence must be given great weight. Harris v. State, 376 So.2d 773, 776 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala. 1979). "The trial judge's finding of admissibility 'will not be disturbed on appeal unless it is evident that the determination was palpably contrary to the weight of the evidence.' " *Page 761 Watkins v. State, 497 So.2d 1153, 1154
(Ala.Cr.App. 1986) (quoting Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985)). The determination of the admissibility of the defendant's confession was within the sound discretion of the trial court, which was in the best position to determine the credibility of the voir dire witnesses by observing their testimony and demeanor. See Lindsey v. State, 456 So.2d 383, 389 (Ala.Cr.App. 1983), aff'd, 456 So.2d 393
(Ala. 1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985). This determination will not be disturbed on appeal if supported by a preponderance of the evidence. Lindsey; 1 LaFave Israel, [Criminal Procedure,] at section 10.4(b).' "
The appellant was asked to go to the police station. He voluntarily agreed to go to the station and talk with the police. There was no pressure applied to detain the appellant. Once at the police station, the appellant was never told that he was not free to leave or told that he had to stay. The appellant was questioned approximately 30 minutes before he was given Miranda warnings. "The fact that the appellant was a suspect or that the investigation had focused on him when he arrived at the police station is not determinative of custody."Hooks v. State, supra at 349. There was no evidence that a custodial situation existed until the appellant voluntarily admitted participation in criminal activity. Immediately thereafter, the investigative interrogation became an accusative interrogation and the appellant was twice given hisMiranda rights. Clearly, probable cause existed for the appellant's arrest after he voluntarily gave his incriminating response. Because the appellant was not unlawfully detained, the motion to suppress his statement and the physical evidence seized as a result of that statement was, thus, properly denied.
AFFIRMED.
All Judges concur except LONG, J., who recuses.