Shana Brooke Smith was indicted for theft of property in the second degree, a violation of § 13A-8-4, Ala. Code 1975, and for illegal possession of, or fraudulent use of, a credit card, a violation of § 13A-9-14, Ala. Code 1975. Smith filed a motion to suppress evidence of statements she made to Detective R.E. Parker at the Montgomery police station on February 18, 1997, and at her place of employment on March 28, 1997. Smith contended that these statements were obtained in violation of her Miranda[1] rights. The circuit court granted Smith's motion to suppress the statement she gave on February *Page 926 
18, 1997, and the state appeals from that order.[2]
The state contends that the trial court erred in suppressing Smith's statement because, it argues, she was not in custody when she gave her statement. We agree.
The following evidence was presented at the suppression hearing:
Anita Beasley Moore testified that on February 4, 1997, her wallet, which contained various credit cards and currency, was stolen from her office. The following day, Ms. Moore called the companies that had issued her credit cards to report that the theft of her cards. During a telephone call with one of the companies, she was informed by a company representative that the card they had issued to her had been used twice on the evening of February 4. Ms. Moore was further informed by the representative that the card had been used at a gasoline service station in the Capitol Heights area of Montgomery. Ms. Moore, through her own investigative efforts, located the service station where the card had been used and spoke to the clerk who was on duty on the evening of February 4. She presented a group photograph of several of her coworkers, one of whom was Shana Smith, to the clerk because she suspected that a coworker had stolen her wallet. The clerk identified Smith as the individual who had used Ms. Moore's credit card. Ms. Moore provided this information to Detective R.E. Parker.
Detective Parker testified that upon receiving this information from Ms. Moore, he telephoned Smith and asked her if she would come to the police station to answer questions about the theft. Smith agreed to do so, and on February 18, Smith drove to the police station in her vehicle and met with Detective Parker. She again told Detective Parker that she was willing to answer any questions. Detective Parker testified that he did not handcuff or detain Smith in any way, and that she was free to leave at any time. The interrogation lasted approximately 19 minutes, after which Smith left. Detective Parker did not advise Smith of her Miranda rights during this interrogation.
Smith did not testify at the suppression hearing.
The trial court entered an order granting Smith's motion to suppress her February 18 statement. Although the trial court made no findings of fact or conclusions of law in its order, it was clear from the suppression hearing that the issue before the court was whether a Miranda warning was required before Smith was questioned on February 18.
A Miranda warning is not required unless the person the police are questioning is under arrest or is subjected to custodial interrogation. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra,384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Miranda is not implicated when a police interrogation is merely investigative rather than accusative; thus, a distinction must be made between general police interrogation and custodial interrogation. The court must examine the surrounding circumstances of each case before making this distinction.
 " 'The United States Supreme Court in California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) articulated "the standard by which 'custody' is to be judged." [,] Davis [v. Allsbrooks, 778 F.2d 168,], 171 [(4th Cir. 1985)]. In its opinion, the Supreme Court stated that "although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, supra, 463 U.S. at 1125, 103 S.Ct. at 3519-20, 77 L.Ed.2d 1275 (quoting [Oregon v.] Mathiason, 429 U.S. [492] at 495, 97 S.Ct. [711] at 714 [50 L.Ed.2d 714 (1977)]). See also Primm [v. State, 473 So.2d 1149] at 1158 [(Ala.Cr.App. 1985)]. *Page 927 
 " 'A determination of "custody" is not based on "the subjective evaluation of the situation by the defendant or the police officers." Davis, supra at 171. Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect's freedom of action has been restricted by the police in any significant manner. Davis, supra at 171; [(United States v.] Miller, [587 F. Supp. 1296] at 1299 [(W.D.Pa. 1984)]; Warrick [v. State, 460 So.2d 320 (Ala.Cr.App. 1984)]; Hall [v. State, 399 So.2d 348, 351
(Ala.Cr.App. 1981)]. "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his position." United States v. Jonas, 786 F.2d 1019, 1022 (11th Cir. 1986) (quoting Berkemer v. McCarty, 468 U.S. 420
[442-44], 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317
(1984)).' "
Smolder v. State, 671 So.2d 757, 760 (Ala.Cr.App. 1995) (quoting Hooks v. State, 534 So.2d 329, 347-48 (Ala.Cr.App. 1987)).
 "In order to decide if a suspect is 'in custody,' the court, looking at the totality of the circumstances, must find that a reasonable person in the accused's position would believe that he or she is not free to leave. Landreth [v. State], 600 So.2d [440] at 444 [(Ala.Cr.App. 1992)]."
 " 'In deciding whether the questioning of a suspect is "custodial" the following factors should be considered:
 " ' "whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of the questioning, how the suspect got to the place of questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence of guilt, and the degree of pressure applied to detain the suspect." '
 600 So.2d at 444, quoting P.S. v. State, 565 So.2d 1209, 1214 (Ala.Cr.App. 1990)."
Johnson v. State, 673 So.2d 796, 798 (Ala.Cr.App. 1995).
The facts in this case are very similar to the facts presented in State v. Jude, 686 So.2d 528 (Ala.Cr.App.), cert. quashed, 686 So.2d 536 (Ala. 1996). In Jude, this Court reversed the trial court's decision to suppress an accused's statement because the weight of the evidence showed "that a reasonable person in Jude's position would not have felt that he was in custody when he gave his statement." Id. at 534. InJude, a police detective went to the accused's home and requested that he accompany the officer to the police station for questioning. Jude agreed to accompany the detective to the station and was not physically restrained at the police station and was questioned only briefly by the detective. Jude was the main focus of the detective's investigation, but he was not placed under arrest before he was questioned. Based on these facts, this Court held that no Miranda warning was required before Jude was questioned.
In this case, Detective Parker requested that Smith come to the station to answer questions. Smith drove to the police station voluntarily and was questioned briefly by one detective. She was not under arrest at the time of her interrogation, she was not physically restrained, and she was not told that she could not leave. In fact, after the interrogation, Smith was permitted to leave. Although Detective Parker testified that Smith was the main suspect in the investigation, he stopped short of directly accusing her of committing the offense. We note that the facts in this case are similar not only to those in State v. Jude, supra, but also to at least two other cases, Smolder v. State, supra; and Johnsonv. State, 673 So.2d 796 (Ala.Cr.App. 1995). In Smolder, supra, and Johnson, supra, this Court upheld the trial court's denial of a motion to suppress, concluding in each of these cases that the suspect was not in custody at the time of the police interrogation.
We recognize that a trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this court *Page 928 
and that such ruling will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence. Finch v.State, 518 So.2d 864 (Ala.Cr.App. 1987). This standard of review is applicable "even where the matter rests upon the testimony of only one witness, [because] the trier of fact is free to accept or reject the witness's statements." State v.Ivey, 709 So.2d 502, 505 (Ala.Cr.App. 1997). Here, Detective Parker's version of the events was undisputed. The totality of the circumstances of Smith's interrogation does not support a finding that Smith was in custody and that a Miranda warning was required. In fact, the weight of the evidence establishes the contrary. Based on our review of the evidence presented at the suppression hearing, we conclude that the trial court's suppression of Smith's statement is palpably contrary to the weight of the evidence. Accordingly, the judgment of the trial court granting Smith's motion to suppress her February 18, 1997, statement is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The record is silent regarding any ruling on the suppression of the March 28, 1997, statement.