SHAW, Judge.
Cleon Nicholas Fields appeals from the trial court’s order revoking his probation.
On May 26, 2000, Fields was convicted of altering a firearm, a violation of § 13A-11-64, Ala.Code 1975. He was sentenced *186 to five years’ imprisonment; the sentence was suspended and he was placed on probation for three years. On March 6, 2001, Fields’s probation officer, Mary Andriano-poulos, filed a delinquency report alleging that Fields had violated the terms and conditions of his probation by (1) having contact with illegal drugs; (2) being in possession of or consuming alcoholic beverages; and (3) frequenting establishments whose principal source of income is the sale of alcoholic beverages. After a probation-revocation hearing, the trial court found that Fields had violated the terms and conditions of his probation, and it revoked his probation.
Fields contends that the trial court erred in allowing his probation officer to testify that he had admitted to her that he had consumed alcohol[1] and cocaine and that he had patronized a local nightclub. According to Fields, his admissions to his probation officer were inadmissible at the probation-revocation hearing because, he says, he was never advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Initially, we note that the State argues that this issue was not preserved for review because, it says, Fields did not object to the probation officer’s testimony on the ground that he had not received Miranda warnings. We disagree.
During the probation officer’s testimony, the following occurred:
“[Prosecutor]: Have you had an occasion to test him for cocaine?
“[Probation officer]: I did.
“[Prosecutor]: What were the results of that test?
“[Fields’s counsel]: Objection. The test is not here. It has not been shown the test has any degree of reliability. It would be hearsay as to the admission of any results of any tests or instruments.
“THE COURT: Overrule the objection.
“[Prosecutor]: What were the results of his test, ma’am?
“[Probation officer]: Positive for cocaine.
“[Prosecutor]: Did he make any admission with regard to that cocaine? “[Probation officer]: He did.
“[Fields’s counsel]: I object again. May I have a continuing objection because I don’t think it’s been shown to any degree of reliability of the test, what test was given, or any other of the matters that would allow that to be heard in evidence before the Court.
“THE COURT: Overrule the objection.
“[Prosecutor]: What, if any, admission did the defendant, Cleon Fields, make to you at this time?
“[Probation officer]: He stated that there was no excuse. I asked him what he meant. He said about a month ago he used cocaine.
“[Field’s counsel]: Again, my objection — I just have it as continuing, Your Honor, because it starts from the faulty premise and a continuation from the faulty premise and a continuation from the hearsay and was obtained, I think, improperly in this case.
“THE COURT: All right. Overruled.
*187 “[Prosecutor]: While observing and being over him as a probation officer, did you have an occasion to interview him about going into bars and night clubs?
“[Probation officer]: I did.
“[Prosecutor]: And what, if any, admissions did he make to you with regard to frequenting night clubs while on probation?
“[Fields’s counsel]: Same objection. Again, if the probation officer is attempting to trap the defendant into an admission of guilt without informing him that anything he says can and mil be used against him, I think that that is a matter that is objected to and should not be considered in evidence against this defendant.
“THE COURT: All right. Overrule the objection.
“[Prosecutor]: Ma’am, can you answer the question?
“[Probation officer]: On March the 5th, he made a statement that he admitted that he had been going into a club prior to the time that I had spoken to him and instructed him February of 2001.”
(R. 5-7.) (Emphasis added.) During cross-examination, the probation officer testified that she had not advised Fields of his Miranda rights before Fields admitted to using cocaine and frequenting a nightclub. Fields’s counsel then renewed his objection to the probation officer’s testimony. The objection was overruled.
We agree with the State that Fields did not object to the testimony of his probation officer regarding his admission that he had used cocaine on the ground that he had not been advised of his Miranda rights. Therefore, as to that testimony, Fields’s claim that he should have been advised of his Miranda rights is not properly before this Court for review. See Ex parte Frith, 526 So.2d 880, 882 (Ala.1987) (“The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.”). However, the record reflects that Fields did object to the testimony of his probation officer regarding his admission that he had frequented a nightclub on the ground that he had not been advised of his Miranda rights; therefore, as to that portion of the probation officer’s testimony, this issue was properly preserved for review.
The question before this Court is whether a probationer’s statement to his or her probation officer in which the probationer admits to violating one or more of the terms and conditions of probation is admissible in a probation-revocation proceeding when the probation officer had not given Miranda warnings to the probationer. We hold that it is.
It is well settled that Miranda warnings are not required unless the person is under arrest or subject to custodial interrogation. See State v. Smith, 715 So.2d 925 (Ala.Crim.App.1998); State v. Jude, 686 So.2d 528 (Ala.Crim.App.), cert. quashed, 686 So.2d 536 (Ala.1996); Smolder v. State, 671 So.2d 757 (Ala.Crim.App.1995); and Hooks v. State, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989). “By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda, 384 U.S. at 444, 86 S.Ct. 1602 (footnote omitted).
“ ‘A determination of “custody” is not based on “the subjective evaluation of the situation by the defendant or the police officers.” Davis [v. Allsbrooks, 778 F.2d 168, 171 (4th Cir.1985)]. Where *188 there has not been a formal arrest (as here), an objective test is used to determine whether the suspect’s freedom of action has been restricted by the police in any significant manner. Davis, supra at 171; [United States v.] Miller, [587 F.Supp. 1296, 1299 (W.D.Pa.1984)]; Warrick [v. State, 460 So.2d 320, 322 (Ala.Crim.App.1984)]; Hall [v. State, 399 So.2d 348, 351 (Ala.Crim.App.1981)]. “The only relevant inquiry is how a reasonable man in the suspect’s position would have understood his position.” United States v. Jonas, 786 F.2d 1019, 1022 (11th Cir.1986)(quoting Berkemer v. McCarty, 468 U.S. 420 [442], 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984)).’ ”
Smolder, 671 So.2d at 760, quoting Hooks, 534 So.2d at 347-48. See also Smith, 715 So.2d at 927.
Our research has revealed no Alabama cases directly addressing this issue.[2] However, in Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the United States Supreme Court was presented with a similar issue — specifically, whether a probationer’s admission to his probation officer that he had committed a murder some seven years before he had been placed on probation was admissible against that probationer in the trial for that murder in the absence of Miranda warnings. The Court held that Miranda warnings were not required in such a situation because a meeting with a probation officer is not a “custodial interrogation.” The Court stated:
“Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers’ will and to confess. Miranda v. Arizona, 384 U.S. at 456-457[, 86 S.Ct. 1602], It is unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to a similar impression. Moreover, custodial arrest thrusts an individual into ‘an unfamiliar atmosphere’ or ‘an interrogation environment ... created for no purpose other than to subjugate the individual to the will of his examiner.’ Id., at 457[, 86 S.Ct. 1602]. Many of the psychological ploys discussed in Miranda capitalize on the suspect’s unfamiliarity with the officers and the environment. Murphy’s regular meetings with his probation officer should have served to familiarize him with her and her office and to insulate him from psychological intimidation that might overbear his desire to claim the privilege. Finally, the coercion inherent in custodial interrogation derives in large measure from an interrogator’s insinuations that the interrogation will continue until a confession is obtained. Id., at 468[, 86 S.Ct. 1602]. Since Murphy was not physically restrained and could have left the office, any compul *189 sion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator.”
465 U.S. at 433, 104 S.Ct. 1136 (footnote omitted). The Court went on to explain that Murphy’s failure to assert his Fifth Amendment privilege against self-incrimination when speaking with his probation officer did not fall within any of the recognized exceptions to the general rule that a person must assert the privilege or lose its benefit. The Court specifically noted:
“A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer’s answers would be deemed compelled and inadmissible in a criminal prosecution.”
465 U.S. at 435, 104 S.Ct. 1136 (footnote omitted). In an accompanying footnote, the Court stated:
“The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. Gagnon v. Scarpelli, 411 U.S. 778, 782[, 93 S.Ct. 1756, 36 L.Ed.2d 656] (1973); United States v. Johnson, 455 F.2d 932, 933 [(5th Cir.)], cert. denied, 409 U.S. 856[, 93 S.Ct. 136, 34 L.Ed.2d 101] (1972). Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.”
465 U.S. at 435-36 n. 7, 104 S.Ct. 1136 (emphasis added).
Several jurisdictions have followed the Supreme Court’s statements in Minnesota v. Murphy and have held that a probation officer is not required to give Miranda warnings to a probationer during routine interviews and that admissions by probationers to probation officers in the absence of Miranda warnings are admissible against the probationers in probation-revocation proceedings. See United States v. Nieblas, 115 F.3d 703, 705 (9th Cir.1997) *190 (holding that a probationer’s statement to her probation officer was admissible against the probationer in a probation-revocation proceeding because “a probationer generally has no Fifth Amendment privilege regarding questions relevant to the status of her probation”); United States v. Rea, 678 F.2d 382, 390 (2d Cir.1982) (holding that a probationer’s statement to his probation officer is admissible against the probationer in a probation-revocation proceeding despite the fact that the probationer requested an attorney during the interview because a probationer has “no right to have a lawyer present during an interview with his probation officer”); and United States v. MacKenzie, 601 F.2d 221 (5th Cir.1979), cert. denied, 444 U.S. 1018, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980) (holding that a probationer is not entitled to Miranda warnings before being interrogated by his probation officer regarding violations of the terms and conditions of his probation). See also Simpson v. State, 252 Ga.App. 1, 555 S.E.2d 247 (2001); State v. Cossin, 110 Ohio App.3d 79, 673 N.E.2d 649 (1996); State v. Aldape, 14 Kan.App.2d 521, 794 P.2d 672 (1990); Cleveland v. State, 557 So.2d 959 (Fla.Dist.Ct.App.1990); Hughes v. Gwinn, 170 W.Va. 87, 290 S.E.2d 5 (1982); Alspach v. State, 440 N.E.2d 502 (Ind.Ct.App.1982); State v. Joao, 61 Haw. 571, 606 P.2d 1332 (1980); Childers v. Commonwealth, 593 S.W.2d 80 (Ky.Ct.App.1979); State v. Generoso, 156 N.J.Super. 540, 384 A.2d 189 (1978); State v. Lassai, 366 So.2d 1389 (La.1978); State v. Rivera, 116 Ariz. 449, 569 P.2d 1347 (1977); People v. Hardenbrook, 68 Mich.App. 640, 243 N.W.2d 705 (1976); and State v. Johnson, 9 Wash.App. 766, 514 P.2d 1073 (1973).
We join these jurisdictions and hold that a probationer is not entitled to Miranda warnings before or during required meetings with his or her probation officer because those meetings are not custodial interrogations, and that a probationer’s admission, during such a meeting, to his or her probation officer that the probationer has violated one or more of the terms and conditions of probation is admissible against that probationer in a probation-revocation proceeding. Because Fields’s meetings with his probation officer were not custodial interrogations, Fields was not entitled to Miranda warnings before he spoke with his probation officer, and the trial court did not err in allowing Fields’s probation officer to testify regarding Fields’s admission that he had frequented a local nightclub in violation of the terms and conditions of his probation.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and WISE, JJ., concur.
BASCHAB, J., recuses herself.

. Fields’s probation officer testified at the revocation hearing only that Fields had admitted to her that he had used cocaine; she did not testify that Fields had admitted to her that he had consumed alcohol. However, in her delinquency report, she stated that Fields had admitted to her that he had "got drunk.” (C. 4.)

. We have found only two cases with facts similar to those in the present case. In Dill v. State, 600 So.2d 343, 370 (Ala.Crim.App.1991), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993), this Court was faced with the question whether Miranda warnings were required during an interview with a parole officer conducted for purposes of compiling a presentence report. Although we held that any error in the trial court's considering the presentence report and the appellant's admissions to his parole officer was harmless, we pointed out that some federal jurisdictions have held that Miranda warnings were not required during presen-tence interviews. In addition, in Thompson v. State, 356 So.2d 757 (Ala.Crim.App.1978), this Court held that the appellant’s statement to a law-enforcement officer admitting that he had been involved in a murder and an attempted murder was admissible in the appellant’s revocation proceedings. Although in Thompson, the appellant had been given his Miranda warnings before his admission, this Court noted in dicta that "the exclusionary rule in Miranda does not apply to probation revocation proceedings.” 356 So.2d at 761.