HARRIS, Judge.
Appellant was convicted of rape and the jury fixed his punishment at ten years in the penitentiary. Appellant had retained counsel at arraignment and entered a plea of not guilty. On the day his case was called for trial his retained counsel informed the Court that appellant had not paid any amount on his fee although he had made numerous promises to do so before trial and counsel told the Court that he was withdrawing from the case.
The trial court asked an experienced trial lawyer if he would accept appointment to represent appellant and suggested that the case be passed one week to afford new counsel time to prepare the case. This lawyer conferred with appellant for about an hour and told the Court that he would represent appellant and that appellant did not wish a continuance but wanted an immediate trial. The trial court informed appellant that he would issue instanter subpoenas for any witness or witnesses prior to going to trial but appellant assured the Court that he did not want to summon anyone and the case went to trial on August 23, 1976, about eleven months after the alleged rape was committed.
At the conclusion of the District Attorney’s argument, during which appellant’s counsel made no objections, appellant moved for a mistrial on the grounds of improper and prejudicial argument. The Court considered the motion and refused to grant a mistrial but informed counsel that he would charge the jury not to consider argument of counsel as evidence in the case. The Court did so charge the jury and more will be said with reference thereto later in this opinion.
Appellant filed a motion for a new trial in which he raised the sufficiency of the evidence for the first time. This motion was also predicated on the refusal of the trial court to grant a mistrial because of the improper and prejudicial argument of the District Attorney in his closing argument to the jury. The motion for a new trial was submitted on argument only and the motion was denied.
The evidence was in sharp conflict and this made and presented a question for the jury to resolve. The testimony adduced by the State showed a brutal and aggravated case of rape committed by appellant on the victim. While appellant admitted that he was in the victim’s company for two or three hours, he denied that he raped her and denied that he had sexual relations with her.
The victim was a 22 year old senior at Auburn University and on Saturday, October 4, 1975, her boyfriend, Jim Conner, invited her to go to Mentone in DeKalb County to visit some of his friends who were spending the weekend at Camp Laney. They arrived at Camp Laney Sunday morning around 6:00 a. m. After spending the day and having supper they decided to drive back to Auburn late that night. Jim *459 Conner was driving the victim’s car and as they descended Lookout Mountain towards the town of Valley Head they were stopped by police officers who told Conner he would have to go to Fort Payne and take a breath test. While they were stopped on the highway a man driving a noisy red or orange Volkswagen arrived at the scene and had a conversation with one of the officers. This was observed by the victim.
After Conner left in the patrol car with two of the officers, the victim, who had never been to Mentone before that weekend, decided to try to find her way back to Camp Laney. She turned her ear around and as she started back up the mountain she noticed the man in the Volkswagen was following closely behind her.
After driving several miles the victim realized that she.did not know the route back to Camp Laney and she pulled her car over to the side of the road in order to turn around. Just as she started to make a U-turn, the man who had been following her got out of his Volkswagen and approached her car. He identified himself as Gary Jones, stating that he was an off-duty policeman, and offered to help her. He told her that he knew a judge who would have the Valley Head police officers release her boyfriend. He suggested that she lock her car and get in his car and they would go see the judge. The victim was confident that this man was a police officer because of his assurances and the fact that he had stopped to talk with the officers who had stopped Conner back in Valley Head. She locked her car and got in the car with Gary Jones.
As Jones drove along the highway he explained to the victim that he had been drinking and did not want to see the judge because he was a policeman. He asked the victim how she was going to pay him back for all his trouble and drove his car down a dirt road and stopped. She told him that she did not have any money with her, and he said, “That’s not what I mean. I mean for you to_” He asked her if she was a virgin and when she replied in the affirmative he laughed insanely and threatened to kill her if she did not “_ -” She attempted to jump out of the car at that point but Jones grabbed her by the neck and started choking her. He pushed her into the back seat and removed all her clothing from the waist down and tried to force her to perform fellatio on him, but she vomited. Then he threw her out of the car onto the ground and had intercourse with her. In an effort to make him stop the victim started praying and even feigned an epileptic fit but Jones became more infuriated and choked her until she was almost unable to breathe. Several times he told her he would kill her if she did not stop screaming. She stated he threatened to kill her at least six times.
When Jones had gratified himself he ordered the victim to dress and get back in the car. He told her to sit up and look straight ahead as he drove her back to her car. He told her he would kill her if she told anyone what had happened. On the way to her car they were stopped by a police officer but she did not raise her head to look at the officer and made no outcry or complaint because she feared for her life in the light of the threats of death by Jones.
After they reached her car Jones told her to follow him. She paid no heed to this directive and drove off at a high rate of speed. Hoping to lose Jones, she pulled down a side road and stopped at the first house she saw and knocked on the door. A young boy came to the door and let her in the house and the boy’s mother, Mrs. Barbara Webb, came to her and the victim told her that she had been raped by a policeman. The victim begged Mrs. Webb not to telephone the police for fear that Jones would find her and kill her. Mrs. Webb offered to lead the victim back to Camp Laney where she hoped to find Conner and the victim followed Mrs. Webb to the camp.
When the two women reached Camp La-ney, the time was about 6:00 a. m. Conner was standing outside as they drove up and Mrs. Webb turned around and left without further conversation. The victim told Jim Conner what had happened. She then called her home in Texas to ask her parents what to do. After waiting for hours in vain *460 for the arrival of the Sheriff whom the victim thought her father had contacted she and Conner left for Auburn where she went to the Lee County Hospital emergency room for examination and treatment.
In the emergency room the victim was seen and thoroughly examined by Dr. Thomas M. Chase, a gynecologist, who testified at the trial that he had been notified of the rape by the victim’s sister. Dr. Chase testified that he performed a pelvic examination on the victim and found the hymen had been ruptured and that she was a virgin before she was raped. He further testified there was a bruise on her right cheek and it was fresh. He stated there was a hematoma or blood clot of the left hymenal ring and a laceration of the vaginal four-chette. He further testified that the rape had been a brutal assault and that semen was still present in her vagina when he examined her. The doctor further testified that from the history he obtained from the victim it revealed that she was in her mid-cycle and could most easily become pregnant. That he gave her hormone pills to prevent pregnancy and treated her with an antibiotic to prevent venereal disease and medication to prevent nausea.
The clothing worn by the victim was personally delivered by her to William H. Landrum, a toxicologist with the State Department of Toxicology in Auburn, Alabama. He testified that he found stains in the crotch area of the blue jeans and also stains in the crotch area of her underpants. He stated his examination revealed these stains to be blood and spermatozoa or semen.
Appellant was arrested on November 2, 1975, upon his return from a trip to Columbus, Georgia. As above stated he admitted being with the victim for two or three hours in the early morning hours on Sunday, October 5, 1975, but denied that he raped the victim. He also denied that he told her he was an off-duty policeman and denied that he had ever made the statement to anyone that he was a policeman. He also denied that he had been drinking in a night club in Chattanooga the evening before the rape.
On rebuttal the State produced witnesses who testified that appellant told them he was a policeman in Mentone and that he had been in a night club in Chattanooga drinking the night before he got with the victim.
Appellant urges a reversal of this case based on the closing argument of the District Attorney. As we have pointed out, appellant did not object to the argument of the District Attorney except in one instant and his objection was sustained.
In brief and in oral argument before this Court, appellant’s counsel states that the District Attorney made the following argument to the jury:
“How would you feel if it was your daughter? How do you think this father feels? How would Mr. French feel if it was his beautiful daughter? You wouldn’t like it and he wouldn’t like it, and I don’t like it, and you’ve got to do something about it.”
The record is devoid of any such statement. The record does reflect that after the District Attorney had closed his argument, and out of the presence and hearing of the jury, the following occurred:
“MR. FRENCH: I have a motion for mistrial on the grounds that the District Attorney put the jury in the same position as the victim of the crime and did that on more than one occasion. ‘Put yourself in the position of Miss_Put yourself in the position of her father.’ We think , we’re entitled to a mistrial on those grounds.
“THE COURT: I’ll deny the motion.
“MR. FRENCH: Secondly, I’d like the jury to be instructed as to these facts, and I didn’t object at the time, that her father told her to return to Auburn on that afternoon and that the policemen were gone to Gadsden to investigate a robbery. That wasn’t in the testimony.
“THE COURT: Gentlemen, I’ll instruct the jury that what the lawyers have said is not evidence in the case.
*461 “MR. FRENCH: We except to the Court’s ruling on the motion.”
In the Court’s oral charge to the jury he stated:
“Gentlemen, in determining what the true facts in the case are you are limited to the evidence that has been presented from the witness stand as opposed to matters that have been stated by the lawyers in the course of the trial. What the lawyers have said, both for the state and for the defendant, is not evidence in the case. What they have argued to you at various points in the trial is not evidence. They have a right and a duty at the appropriate time in the trial to comment on the evidence and to draw reasonable inferences from the evidence as they argue their respective positions to you. What they say is not evidence and you should put what they say in a proper category in your thinking and it should not be in the evidence category, just as the indictment in the case should not be in the evidence category.”
 Since appellant did not object to the argument of the District Attorney and invoke a ruling from the trial court this matter is not presented to this Court for review. The argument complained about is not set out in the transcript and we are bound by the record. Canady v. State, 55 Ala.App. 473, 316 So.2d 720.
In Embrey v. State, 283 Ala. 110, 214 So.2d 567, the Supreme Court held:
“If counsel wishes to preserve for review any ruling of the trial court made during closing argument, he must object and point out to Court that portion of argument to which he objects and when that is done it is made part of the record for appellate review.”
Even if the claimed error had been properly preserved we do not consider the argument to be so grossly improper, prejudicial or inflammatory that it could not have been eradicated from the minds of the jury upon proper instructions from the Court. But, absent an objection, the Court was not afforded an opportunity to so instruct the jury to disregard the argument of the prosecutor. Windom v. State, 18 Ala.App. 430, 93 So. 79.
In Sharp v. State, 193 Ala. 22, 69 So. 122, the Court said:
“The effect of our decisions is that a mere objection to already spoken words does not reach the evil aimed at, and that the court must be appealed to to exclude them from the consideration of the jury, failing which there is nothing presented for review by an exception.”
We cannot know what effect the argument of the District Attorney had on the minds of the jury. However, we are not persuaded that the jury was prejudiced or inflamed as they fixed appellant’s punishment at only ten years in the penitentiary for one of the most brutal and aggravated rape cases that has reached this Court in a long time.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, J., who recuses himself.