In April of 1975 appellant was indicted for the offense of burglary in the second degree. When his case was called for trial he made application to be treated as a Youthful Offender. This application was granted and appellant waived a jury trial and pleaded guilty to being a Youthful Offender. He was sentenced to three years in the custody of the Director of the Department of Corrections. This sentence was suspended "pending the good behavior" of appellant for a period of three years. This order was made on May 8, 1975. In addition to suspending appellant's sentence the trial court assessed a fine of one hundred dollars against him and also the court costs.
On May 27, 1977 the State, through the District Attorney's Office of Mobile County, moved that appellant's probation be revoked on the ground that he had violated a valid condition on which the probation was granted. Specifically, the motion for revocation alleged that, on March 7, 1977, appellant was arrested on a charge of murder in the first degree and that this charge was then pending in the Circuit Court of Mobile County.
The revocation hearing was held on September 20, 1977, and appellant was duly notified to appear and show cause, if any, why the suspension of the execution of the sentence imposed on him on the 23rd day of June, 1975, should not be revoked.
At the revocation hearing appellant was represented by counsel. Mike Reynolds testified for the State that he was appellant's probation officer and that he filed a delinquency report on appellant on May 3, 1977. This report was admitted into evidence without objection. Reynolds further testified that appellant had also been charged with assault with intent to murder on August 1, 1977. The delinquency report is as follows:
"DELINQUENT CHARGE OR CHARGES
 "Subject is charged with violating the following conditions of his Probation:
 "CHARGE # 1: New arrest for the offense of Assault With Intent to Murder: "On August 1, 1977, the probationer was arrested by Officer T. Barbour of the Mobile Police Department and charged as styled above. Detective Frank Woodward conducted the follow-up investigation. On September 9, 1977, Thompson waived examination in District Court and was bound over to the Grand Jury on $1000 bond.
 "The details of the offense are essentially as follows:
 "At approximately 9:15 a.m., on July 29, 1977, Sgt. Ralph Dueitt of the Mobile Police Department was stopped at Water and Government Street by a black male. He advised Sgt. Dueitt that he had been shot. The black male proceeded on to Government and Broad, but could drive no further. An ambulance was dispatched to the foregoing location.
 "At the University Medical Center, the victim was identified as Michael Weathington. He told the investigating Officers, Woodward and Barbour, he had been shot by one Lawrence Kidd (the probationer) in the parking lot of Bender's Shipyard on South Royal Street. The victim stated he knew Kidd well. "The victim further stated Kidd (Thompson) was involved in the shooting death of his brother in March of this year. (See attached copy of Delinquency Report dated 3-3-77.)
 "The victim stated he saw the probationer at Bender's this morning. Kidd (Thompson) pointed a pistol at him, the victim, at which time he leaped from the car. Thompson fired one shot that struck him in the right leg.
"Thompson surrendered himself at the Mobile Police
Department on August 1, 1977.
"The witnesses in this case are:
"Michael Weathington, complainant
"Sgt. F. Woodward, primary investigator
"Sgt. G. Presnall, statement from Thompson
 "Officer T. Barbour, patrol unit assigned to original call *Page 759 
 "The above was transcribed from the report of Sgt. Woodward.
"SUBJECT'S STATEMENT:
 "Thompson stated the victim pointed a gun at him in the Bender's lot, and that he, Thompson, ran away. He made no mention of any shots fired.
"CHARGE # 2: Failure to Report as Directed:
 "Thompson has been sparodic about monthly reporting. He missed March and April of 1976. I indicated that July 27, 1977, was his first actual report of this year.
 "It appears that the probation rule concerning reporting no later than the third working day of each month has little significance for Thompson.
"SUPERVISION SUMMARY:
 "On June 23, 1975, Lawrence was fully instructed in the rules of probation.
 "On August 4, 1975, he was employed at Alabama Dry Docks.
 "On February 6, 1976, he reported that he had quit his job.
"On May 3, 1977, a Delinquency Report was issued.
 "On May 12, 1977, he was living with his mother, unemployed.
 "On July 27, 1977, he reported his employer was the Alabama State Docks.
"RECOMMENDATION:
 "It is recommended a hearing be held to determine if sufficient evidence exists to revoke probation.
 "Signed and dated in Mobile, Alabama, this 20th day of September, 1977.
 /s/ Kenneth M. Reynolds
"Kenneth M. Reynolds
"State Parole Probation Supervisor
"KMR/cg"
The probation officer further testified that he investigated the facts surrounding the murder charge and the charge of assault with intent to murder. He ascertained the murder victim was one Michael Weathington and there had been a shoot-out at a nightclub known as the Jolly Spot involving this appellant and several others, all armed with weapons.
The charge of assault with intent to murder was related to the participants in the shoot-out in which Weathington was killed.
Appellant testified and admitted that he was charged with murder and also assault with intent to murder all growing out of and related to the shoot-out at the night spot. At this point the hearing was interrupted by the trial judge for the purpose of advising appellant of his constitutional rights not to give incriminating evidence against himself. He advised appellant that any testimony he gave of an incriminating nature could be used against him in the trial of the two cases pending against him. Appellant told the court that he understood his rights and was aware that the District Attorney could use any statement he made showing his involvement in the murder case and the assault with intent to murder case pending against him.
Appellant then testified that some people "ambushed" him and some of his friends the night that Weathington was killed but that he did not shoot at the deceased, saying "I didn't even have a gun."
On cross-examination he stated that his name was Lawrence Thompson but that he was also known as Lawrence Kidd. He said he knew a boy named "Knot" whose real name was Gerald Barnes and they were present at the Jolly Spot where the shooting occurred. At this time appellant objected to any further questions. The Court sustained the objection and would not permit the State to interrogate appellant concerning a signed statement he gave the officers pertaining to the shooting incident.
The case was then passed to September 20, 1977, so that the officer who investigated the homicide could be present to testify. On the latter date Police Officer Robert Moore testified that he conducted an investigation into the homicide that occurred at the Jolly Spot and based upon that investigation he arrested four men, including the appellant. Appellant was charged with murder and he signed a waiver of rights form and made a statement concerning his involvement in the difficulty at the Jolly Spot in which a man named Weathington *Page 760 
was killed. The police report, made by Officer Moore, contained a signed statement of the appellant, introduced into evidence for the limited purpose of showing that appellant had violated the conditions of his probation. Moore was not cross-examined by appellant, and appellant did not offer any further evidence. At the conclusion of this hearing the Court made the following findings:
 "THE COURT: You are Lawrence Thompson, the record reflects that on June 23, 1975 you entered a plea of guilty to the charge of burglary in the second degree, that at that time the Court sentenced you to three years to the State penitentiary and I placed you on active, formal probation with the Probation Department for a period of three years. Now, this record here erroneously reflects burglary in the second degree so I will amend what I just said. I apparently considered that you should be given an opportunity not to have a felony record and the Court reduced the burglary charge to Youthful Offender status and that time I think you entered a plea of guilty to being a Youthful Offender. I also fined you $100.00 and costs of Court. That was back on June 23, 1975. The Court finds that since that time based on what has been presented to the Court that you have been charged with a murder in the first degree charge for the killing of a human being, you have been charged with an assault with intent to murder which was related to the murder case in some respects. You are now 22 years of age. Without question, the Court finds that from the evidence presented and all that is before the Court that you should be revoked and it is the position of this court that I now set aside the suspension and order the sentence of three years to be commenced immediately. Take charge of the defendant."
Appellant contends that "pending good behavior" is a condition of probation so vague and indefinite that he was unable to defend the motion to revoke his probation and that he was, therefore, denied due process. This contention is not a valid one and was put to rest by our case of Holman v. State,43 Ala. App. 509, 193 So.2d 770.
Appellant further contends that the police report was erroneously admitted into evidence, denying him the right to cross-examine certain witnesses who were not present at the hearing. He makes the same contention with respect to the delinquency report filed by the Probation Officer. The short answer to these contentions is that appellant cannot raise such matters for the first time on appeal. Bailey v. State,356 So.2d 752, 1 Div. 871, Ala.Cr.App., this day decided; Jones v.State, Ala.Cr.App., 342 So.2d 457; Rainer v. State, Ala.Cr.App., 342 So.2d 1348.
Appellant argues that his statement to the investigating officer could not be admitted absent Miranda predicates. The officer's report includes a waiver of the Miranda rights signed by appellant and his signed statement concludes as follows:
 "I, Lawrence Thompson having been advised of my rights, do hereby make this voluntary statement to Sgt. Robert Moore of the Mobile Police Department, without fear, threats, offer of reward, or any inducements whatsoever. I also understand this statement will be used in a court of law. I have read this statement consisting of one page, and have had it read to me and I understand its contents fully and clearly and swear it to be a true and correct statement to the best of my knowledge and belief."
Formal procedures and rules of evidence are not employed in probation revocation hearings. Armstrong v. State, 294 Ala. 100, 312 So.2d 620.
On revocation hearings, the standard of proof is not reasonable doubt or preponderance of the evidence, but reasonable satisfaction from the evidence. Armstrong v. State, supra. Martin v. State, 46 Ala. App. 310, 241 So.2d 339.
There should be no question to the legal or nonlegal mind that the commission of murder and assault with intent to murder, during the term of the probation, constitutes *Page 761 
valid grounds to revoke probation. There is an excellent annotation in 77 A.L.R. 3rd, page 669, on the view that the exclusionary rule in Miranda does not apply to probation revocation proceedings. The exclusionary rule of Miranda is preserved for the trial of appellant on the two felony charges if it is found that his constitutional rights were, in fact, violated.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.