50 So.3d 1123 (2009)
C.L.G.
v.
STATE of Alabama.
CR-08-0407.
Court of Criminal Appeals of Alabama.
June 26, 2009.
Rehearing Denied August 14, 2009.
Shannon A. Rash, Dothan, for appellant.
Troy King, atty. gen., and Jack W. Willis, asst. atty. gen., for appellee.
WISE, Presiding Judge.
On October 26, 2007, the appellant, C.L.G., was adjudicated a youthful offender based on an underlying charge of second-degree rape. The trial court sentenced him to serve a term of three years in prison, but suspended the sentence and ordered him to serve three years on probation. On September 9, 2008, C.L.G.'s probation officer filed an "Officer's Report on Delinquent Probationer." After conducting a revocation hearing, the circuit court revoked his probation. This appeal followed.
C.L.G. argues that the circuit court erroneously revoked his probation based solely upon hearsay.
"`The use of such hearsay evidence as the sole means of proving the violation of the probation condition denied appellant the right to confront and cross-examine the person who originated the factual information which formed the basis for the revocation. For this reason, appellant was denied minimal due process of law, and the evidence was insufficient to prove the alleged violation of probation.'
"[Mallette v. State,] 572 So.2d [1316,] 1317 [(Ala.Crim.App.1990)]. See also Ex parte Belcher, 556 So.2d 366 (Ala. 1989) (State's evidence held insufficient in probation revocation hearing where evidence consisted of probation officer's testimony that, while on probation, the appellant was charged with a federal offense, i.e., conspiring to possess, with intent to distribute, approximately 1000 pounds of marijuana, and certified copies of the federal charge).
"`[T]he law is clear that the formality and evidentiary standards of a *1124 criminal trial are not required in parole revocation hearings. Thompson v. State, 356 So.2d 757 (Ala.Crim.App. 1978), Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975). Hearsay evidence may be admitted in the discretion of the court, though the State acknowledges that hearsay evidence cannot be the sole support of revoking probation. Mitchell v. State, 462 So.2d 740 (Ala.Crim.App.1984).
"`. . . .
"`Although probation is a "privilege" and not a right, Wray v. State, 472 So.2d 1119 (Ala.1985), certain standards of due process of law must be met to justify revocation. Those standards are set out in Armstrong v. State, supra.
"`... While we recognize that all the formal requirements of a criminal trial are not mandated, and that the burden of proof is different, Thompson v. State, 356 So.2d 757 (Ala.Cr. App.1978) ("[t]he standard of proof is not reasonable doubt or preponderance of the evidence, but reasonable satisfaction from the evidence"), we also recognize that "[h]earsay information may not be used to furnish the sole basis of the revocation." Watkins v. State, 455 So.2d 160 (Ala.Cr. App.1984). See, also, Moore v. State, 432 So.2d 552 (Ala.Cr.App.1983). In the case at bar, we find that the evidence in the record was insufficient. Although evidence sufficient to support a conviction is not required, a probation officer's report and/or an arrest warrant, standing alone or together, would be insufficient.'
"Ex parte Belcher, supra, at 368-69 (emphasis in original)."
Hall v. State, 681 So.2d 247, 248 (Ala.Crim. App.1995). Further,
"`"`[t]he decision to revoke probation is a judicial function and should be based upon the appellant's conduct and not upon an accusation only. The state must submit enough substantive evidence to reasonably satisfy the trier of the facts that a condition of probation was breached.' Hill[ v. State, 350 So.2d 716 (Ala.Cr.App. 1977)]."'
"Chasteen v. State, 652 So.2d 319, 320 (Ala.Crim.App.1994) (quoting Mitchell v. State, 462 So.2d 740, 742 (Ala.Crim.App. 1984))."
Nash v. State, 931 So.2d 785, 789 (Ala. Crim.App.2005).
In this case, the circuit court revoked C.L.G.'s probation on the ground that he had committed the new offense of obstruction of governmental operations. During the revocation hearing, Sheriff Gregory Ward of the Geneva County Sheriff's Department testified that, between 6:00 p.m. and 7:00 p.m. on September 8, 2008, he took a report regarding a missing juvenile, L.W.; that the report indicated that L.W., who was sixteen years old at the time, had skipped school with a friend, Chelsey Hutto, and the location of L.W. and Hutto was not known at the time; and that, during his investigation, he contacted C.L.G. about L.W. He also testified that C.L.G. told him he did not know where L.W. was; that he had picked up Hutto at the mall in Dothan, and L.W. was going to leave with some of her friends; that he would try to get Hutto to tell him where L.W. was; and that he would help. Ward further testified that he talked to C.L.G. on a second occasion; that C.L.G. told him he had not been able to get any information from Hutto and told him essentially the same story as before; that he talked to Hutto on Saturday evening, and she told him basically the same story; that both C.L.G. and Hutto told him they were going to get back to *1125 him, but he did not receive any telephone calls from them; and that he contacted C.L.G. and told him he was going to put out an "AMBER Alert"[1] for L.W. Finally, he testified that he received information that, after he notified C.L.G. about the "AMBER Alert," C.L.G. and his father went to the St. Clair County Sheriff's Department to tell them the entire story and that L.W. was subsequently located at the home of C.L.G.'s father.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
Rule 801(c), Ala. R. Evid. In this case, Ward's testimony that he had received information that C.L.G. and his father had gone to the sheriff's department after the "AMBER Alert" was issued and that L.W. was subsequently located at C.L.G.'s father's home was offered to prove that C.L.G. and his father had in fact gone to the sheriff's department and that L.W. was in fact located at C.L.G.'s father's house. Therefore, the testimony was offered to prove the truth of the matter asserted therein, and was, by definition, hearsay. Further, in its brief, the State concedes that "the complaint that initiated the investigation, the statements regarding the finding of the juvenile at C.L.G.'s father's house, and the fact that C.L.G. took the juvenile to his father's house are hearsay," but asserts that Ward's testimony regarding the statements C.L.G. made to him constituted adequate non-hearsay evidence to support the revocation of his probation. (State's brief at p. 11.) Although Ward's testimony about the statements C.L.G. made to him did not constitute hearsay, that testimony did not tend to establish that C.L.G.'s statements were false and that he had actually obstructed a governmental operation. At most, his testimony showed that C.L.G. made two statements to him during the course of his investigation. Therefore, the hearsay information Ward received was necessary to show that C.L.G. had lied about L.W.'s whereabouts. Without such information, the State did not present any evidence to reasonably satisfy the circuit court that C.L.G. had actually committed the offense of obstructing governmental operations. Because the only evidence to show that C.L.G.'s statements were false and that he had committed the offense of obstructing governmental operations was Ward's hearsay testimony, the State did not present sufficient non-hearsay evidence to support the revocation of C.L.G.'s probation. Accordingly, we reverse the circuit court's order revoking C.L.G.'s probation and remand this case to the circuit court for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WINDOM and KELLUM, JJ., concur.
WELCH, J., dissents, with opinion.
MAIN, J., dissents.
WELCH, Judge, dissenting.
The majority reverses the trial court's judgment revoking C.L.G.'s probation based on a determination that C.L.G. had violated the terms of his probation by committing a new criminal offense, Ala.Code 1975, § 13A-10-2, obstructing governmental operations. The statute provides:
"§ 13A-10-2. Obstructing governmental operations.
"(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force *1126 or interference or by any other independently unlawful act, he:
"(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
"(2) Intentionally prevents a public servant from performing a governmental function."
The majority holds that the trial court erred because the only evidence establishing that C.L.G. obstructed governmental operations was hearsay evidence from Sheriff Gregory Ward, who testified that C.L.G. and his father had gone to the police department and had revealed that a minor, L.W., who had been reported missing by her father, could be found at C.L.G.'s father's house. Sheriff Ward had no direct knowledge of the foregoing evidence, although he did have direct knowledge of and provided testimony about C.L.G.'s earlier statements to him about L.W.'s whereabouts of; C.L.G. made two separate statements to Sheriff Ward indicating that he did not know where L.W. was located and that he knew nothing of the girl's disappearance, even when Sheriff Ward told C.L.G. that he was going to issue an "AMBER Alert" for L.W. The majority concludes: "Although Ward's testimony about the statements C.L.G. made to him did not constitute hearsay, that testimony did not tend to establish that C.L.G.'s statements were false and that he had actually obstructed a governmental operation. At most, his testimony showed that C.L.G. made two statements to him during the course of his investigation."
I agree with the majority that a judgment revoking probation cannot be based solely on hearsay. E.g., Brazery v. State, 6 So.3d 559 (Ala.Crim.App.2008); Nash v. State, 931 So.2d 785 (Ala.Crim.App.2005); Goodgain v. State, 755 So.2d 591 (Ala. Crim.App.1999). However, that well-established rule of law does not apply in this case; therefore, reversal based on that rule is not necessary. Rule 27.6(d)(1), Ala. R.Crim. P., provides that the trial judge considering a petition to revoke probation must be reasonably satisfied from the evidence that a violation of the conditions of probation occurred. Rule 27.6(d)(1) also states that, in a probation-revocation hearing, "[t]he court may receive any reliable, relevant evidence not legally privileged, including hearsay." (Emphasis added.) The use of hearsay evidence in a revocation proceeding to prove or disprove that a probationer violated a condition of probation proof is clearly allowed by the express terms of Rule 27. The reason any evidencewhether direct or hearsayis presented at a revocation hearing is to persuade the trial court in its determination about whether an alleged probation violation occurred. Clearly, hearsay evidence is permitted as a part of the evidence necessary to make that determination.
In this case, although evidence about C.L.G.'s statement at the sheriff's department admitting that he was aware of the whereabouts of the missing juvenile was hearsay, the revocation was not based solely on that hearsay. Sheriff Ward had independent knowledge of the allegations against C.L.G., and he provided testimony about that evidence. In fact, the majority summarized the testimony from the revocation hearing and stated, in relevant part:
"During the revocation hearing, Sheriff Gregory Ward of the Geneva County Sheriff's Department testified that, between 6:00 p.m. and 7:00 p.m. on September 8, 2008, he took a report regarding a missing juvenile, L.W.; that the report indicated that L.W., who was sixteen years old at the time, had skipped school with a friend, Chelsey Hutto, and the location of L.W. and Hutto was not known at the time; and that, during his investigation, he contacted C.L.G. about *1127 L.W. He also testified that C.L.G. told him he did not know where L.W. was; that he had picked up Hutto at the mall in Dothan, and L.W. was going to leave with some of her friends; that he would try to get Hutto to tell him where L.W. was; and that he would help. Ward further testified that he talked to C.L.G. on a second occasion; that C.L.G. told him he had not been able to get any information from Hutto and told him essentially the same story as before; that he talked to Hutto on Saturday evening, and she told him basically the same story as before; that both C.L.G. and Hutto told him they were going to get back to him, but he did not receive any telephone calls from them; and that he contacted C.L.G. and told him he was going to put out an `AMBER Alert' for L.W. Finally, he testified that he received information that, after he notified C.L.G. about the `AMBER Alert,' C.L.G. and his father went to the St. Clair County Sheriff's Department to tell them the entire story and that L.W. was subsequently located at the home of C.L.G.'s father."
50 So.3d at 1124-25. (footnote omitted).
The majority concludes that the revocation of C.L.G.'s probation was based solely on hearsay and the order revoking C.L.G.'s probation is due to be reversed, and it states:
"Although Ward's testimony about the statements C.L.G. made to him did not constitute hearsay, that testimony did not tend to establish that C.L.G.'s statements were false and that C.L.G. had actually obstructed a governmental operation. At most, his testimony showed that C.L.G. made two statements to him during the course of his investigation. Therefore, the hearsay information Ward received was necessary to show that C.L.G. had lied about L.W.'s where-abouts. Without such information, the State did not present any evidence to reasonably satisfy the circuit court that C.L.G. had actually committed the offense of obstructing governmental operations. Because the only evidence to show that C.L.G.'s statements were false and that he had committed the offense of obstructing governmental operations was Ward's hearsay testimony, the State did not present sufficient nonhearsay evidence to support the revocation of C.L.G.'s probation."
50 So.3d at 1125.
Section 13A-10-2(a), Ala.Code 1975, provides that a person obstructs governmental operations if, by means of intimidation, physical force, interference, or any other independently unlawful act he intentionally obstructs or hinders the administration of law or a governmental function or if he intentionally prevents a public servant from performing a governmental function. The evidence established that C.L.G. lied to Sheriff Ward after L.W. had been reported missing and while the sheriff was conducting an investigation into her absence and that C.L.G. told the sheriff on two occasions that he had no idea of L.W.'s whereabouts. This portion of Sheriff Ward's testimony was nonhearsay. That fact, alone, is sufficient to demonstrate that the trial court's revocation of C.L.G.'s probation was not based solely on hearsay.
The testimony that L.W. was missing, that law-enforcement officials were conducting a governmental operation to locate her, and that she was subsequently located at the home of C.L.G.'s father, was hearsay. The majority recognizes that the C.L.G.'s statements were not hearsay. Indeed, they were offered for the purpose of demonstrating that they were in fact false, and not as a statement offered for the purpose of proving the matter asserted by C.L.G. That their falsity and capacity to *1128 interfere with an ongoing governmental operation was proved by hearsay testimony does not mean that the finding of the trial judge was based solely on hearsay evidence.
Thus, the majority appears to hold implicitly that each element of a criminal charge underlying a revocation violation must be established by direct evidence and cannot be established by hearsay. Such a result is not mandated by either Rule 27, Ala. R.Crim. P., or by any caselaw. The majority cites no case supporting that position.
In light of the specific provision of Rule 27.6(d) stating that the trial court may receive any relevant evidence not legally privileged, including hearsay, the majority's underlying holding is an unwarranted interpretation of Rule 27 and the caselaw interpreting it. The trial court's judgment revoking C.L.G.'s probation was not based solely on hearsay, and it was due to be affirmed. Therefore, I respectfully dissent.
NOTES
[1] The AMBER Alert Program distributes information regarding children who may have been abducted to the general public through various media.