BURKE, Judge.
Tavaress M. Johnson appeals from the revocation of his probation following his guilty-plea convictions for first-degree robbery, second-degree kidnapping, and second-degree burglary. He was sentenced to 20 years’ imprisonment as to each conviction. Following a probable-cause hearing concerning two charges in order to determine if Johnson’s probation should be revoked, the circuit court revoked Johnson’s probation and reinstated his sentence.
At the probable cause hearing, evidence was introduced indicating that Johnson committed domestic abuse while on probation. The victim was not present at the hearing.[1] The State introduced the testimony of Officer R.C. Blanchard of the Montgomery Police Department that, while she was on patrol on the day of the offense, she responded to a domestic violence call. Neighbors in an apartment complex informed her that a man had been “beating a girl in the apartment all day.” (R. 5.) Officer Blanchard was told that the neighbors had called the police earlier, but that the officer who had responded had gone to the wrong apartment and had then left. The neighbors further told Blanchard that the man was wearing a black tank *629 top and blue-jean shorts[2] and that he had run from the back of the apartments and escaped through a field. Officer Blanchard testified that the victim’s mother and other relatives arrived at the scene and ran to the victim’s apartment. When the victim, Tempest Johnson, came to the door, Officer Blanchard observed that her eye was swollen shut and that she was “sobbing, crying.” (R. 5.) Officer Blanchard asked her what had happened and she stated: “[M]y boyfriend, he’s been in there beating me all day.” (R. 5.) She identified her boyfriend as Tavaress Johnson. Officer Blanchard called the medics because of the victim’s condition, and they stated that she may have a concussion. Officer Blanchard testified that “she had been visibly beaten, obviously beaten.” (R. 6.) She stated that the victim’s physical condition corroborated the information that she had been given by the neighbors and the victim.
According to Officer Blanchard, the victim told her that Johnson had held her down in the bedroom and beat her in the face. The victim was unsure if Johnson had left the apartment because she had remained in the bedroom until Officer Blanchard and the victim’s mother had knocked on her door. The victim also informed Officer Blanchard that she had previously signed a warrant against Johnson for domestic violence, prompting Officer Blanchard to ask if she intended to prosecute Johnson for the present incident. She answered affirmatively, and Officer Blanchard forwarded her information to the domestic-violence unit. She also contacted Johnson’s probation officer concerning the offense. They then went to Johnson’s last-known address and attempted to arrest him. However, the victim later decided not to press charges.
Detective Andrew Magnus of the Montgomery Police Department testified that, in the course of investigating an unrelated robbery, he looked into some telephone calls made from the county jail. The inmate who had placed the calls was determined to be Johnson by cross-referencing the pin number that was used.[3] Magnus made copies of the calls and forwarded or e-mailed them to the domestic-violence unit. Recordings of the calls were admitted at the hearing.
Corporal Tina McCaskill of the domestic-violence unit testified that she was assigned to the present case. She testified that the victim failed to come to a meeting to press charges as to this offense. However, when she was originally contacted by Officer Blanchard concerning this domestic violence, she was told that it was uncertain whether the offense would be a misdemeanor or a felony until the extent of the victim’s injuries was determined. McCas-kill then checked the system to determine if Johnson had any “history.”[4] (R. 27.) She determined that Johnson did have a history in the system and contacted his probation officer.
McCaskill further testified that Johnson signed two documents regarding conditions of his release to probation that were essentially protective orders, whereby he was to refrain from any contact with either of the victims. McCaskill further téstified that she had listened to the recordings of the phone calls made from the jail to a *630 female and stated that the female’s telephone number was the same number that she had been given to contact the victim, Tempest Johnson, and that she had, in fact, spoken to the victim at that number. She stated that the phone calls were made after Johnson had been informed that he was not to contact the victim and that the inmate on the calls was telling the female to drop the domestic-violence charges. McCaskill testified that the only domestic-violence charges involving the victim, Tempest Johnson, were those against Johnson.
Officer Meghan Webster, Johnson’s probation officer, testified that Johnson was told that he could not “have any new charges come up.” (R. 36.) He was taken into custody because of two new charges of domestic-violence. Officer Webster spoke with the victim, Tempest Johnson, on the telephone in response to voice mails the victim had left. She had wanted to know the status of Johnson’s case. Officer Webster testified: “I asked her if she was the victim in the case. She said she was. I told her she would be required to come to court. I gave her the dates, and that was basically the end of the conversation.” (R. 39.)[5]
Officer Webster testified that she had listened to the recorded phone calls from the jail and that the telephone number of the female in the calls was that of the victim. She further stated that during the calls the victim refers to the male inmate as “Conflict,” which is Johnson’s alias. The circuit court asked the witness if she knew and recognized the voice as Johnson’s and Officer Webster responded affirmatively. Officer Webster was then examined about the phone calls as follows:
“A. [Officer Webster]: Well, the majority of the conversation was about domestic-violence cases and his probation. He was speaking to [the victim] and telling her — directing her to go down to the detective division and talk to the detectives and tell them that the charges were bogus.
“He further advised her that she needed to write a letter to this Court, addressed to Your Honor, and tell you that the charges were bogus.
“He further talked about the other victim, his cousin, and that she was going to play dirty and that he was going to get his mother to testify that none of that happened, because if his cousin was going to play dirty, then he was going to play dirty.
“I mean, that’s just basically the highlights. It’s — it’s two very long conversations. So there’s a lot in it.
“Q. [Prosecutor] Let me ask you this, too. In addition to him talking and requesting that she say these charges are bogus, did he say anything about his probation, that they — about violating his probation?
“A. He did. He said that the judge could not violate him for one domestic-violence conviction; that one domestic-violence conviction couldn’t get him violated, that they would have to let him out.”
(R. 41-42.)[6]
Defense counsel argued that Johnson’s probation should not be revoked because *631 the State had offered only hearsay evidence concerning the domestic-violence charges. He contended that because the victim did not appear at the hearing the evidence was all hearsay. The court, however, determined that probable cause was shown that Johnson had committed the offenses based, not only on hearsay, but further on the evidence concerning the phone calls. The court noted that Officer Webster identified the voices on the calls as those of Johnson and the victim.[7] The court further stated that “I think with all the cumulative evidence, I think there was plenty there.” (R. 52.) The judge also noted Officer Blanchard’s testimony concerning her observation of the victim’s injuries. Based on the evidence, the court found probable cause to believe that Johnson committed domestic violence and revoked his probation.
On appeal, Johnson argues that there was insufficient evidence to revoke his probation because neither victim testified at the hearing. Specifically, he contends that the State presented only hearsay evidence that could not support the court’s decision to revoke his probation. He also argues that he was not given an opportunity to be heard.
“ ‘It is well settled that hearsay evidence may not form the sole basis for revoking an individual’s probation. See Clayton v. State, 669 So.2d 220, 222 (Ala.Cr.App.1995); Chasteen v. State, 652 So.2d 319, 320 (Ala.Cr.App.1994); and Mallette v. State, 572 So.2d 1316, 1317 (Ala.Cr.App. 1990).’ ” Hall v. State, 964 So.2d 91, 93 (Ala.Crim.App.2007), quoting Goodgain v. State, 755 So.2d 591, 592 (Ala.Crim.App.1999).
“While we recognize that all the formal requirements of a criminal trial are not mandated, and that the burden of proof is different, Thompson v. State, 356 So.2d 757 (Ala.Cr.App.1978) (‘[t]he standard of proof is not reasonable doubt or preponderance of the evidence, but reasonable satisfaction from the evidence’), we also recognize that ‘[hjearsay information may not be used to furnish the sole basis of the revocation.’ Watkins v. State, 455 So.2d 160 (Ala.Cr.App.1984). See, also, Moore v. State, 432 So.2d 552 (Ala.Cr.App.1983). In the case at bar, we find that the evidence in the record was insufficient. Although evidence sufficient to support a conviction is not required, a probation officer’s report and/or an arrest warrant, standing alone or together, would be insufficient.”
Ex parte Belcher, 556 So.2d 366, 369 (Ala.1989).
In the present case, although there was hearsay evidence concerning Johnson’s commission of the domestic-violation offense against the victim, there was also corroborating nonhearsay evidence provided by the audio recordings of Johnson calling the victim. These telephone calls from the jail, despite the court’s order to avoid contact with the victim, clearly involved Johnson instructing the victim, Tempest Johnson, to withdraw the charges. As is common in domestic-vio *632 lence cases, he promised love and support in return for her withdrawing the charges, but insisted that the charges be withdrawn. He also attempted to persuade this victim to tell the other victim to recant and vowed retaliation if she did not. He further instructed the victim to have his mother testify against the other victim if necessary.
Officer Blanchard provided testimony concerning the victim’s injuries that she observed soon after they were inflicted, as well as the victim’s identification of Johnson as her attacker that was made as she was still crying following the assault. Officer Blanchard’s testimony was that, when the victim answered the knock at the door, she asked her what had happened. The victim stated that Johnson had beaten her. This statement is an exception to the hearsay rule because it was made as the victim was still in a state of excitement following the attack and constituted an excited utterance. In Ex parte C.L.Y., 928 So.2d 1069 (Ala.2005), the Alabama Supreme Court explained:
“This out-of-court statement ... is excepted from the operation of the hearsay rule by Rule 803(2), Ala. R. Evid., which states: ‘Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.’
“ ‘[S]trict contemporaneity should not be required between the statement and the occurrence in order for the declaration to qualify for the present hearsay exception. Indeed, our courts have said that time alone is not a determining criterion and that applicability of this exception cannot be decided upon the basis of any specified time or number of minutes between the act and the declaration. The critical factor is whether the person who made the statement is still under the influence of the emotions arising from the startling event. Stated differently, the statement does not have to be made contemporaneously with the startling event or condition but it must be uttered contemporaneously with the excitement resulting from the startling event or condition. How long the excitement prevails is largely determined by the character of the event or condition.’
“Charles W. Gamble, McElroy’s Alabama Evidence § 265.01(2) (5th ed.1996) (footnotes omitted).”
928 So.2d at 1072-73. Thus, “[a] statement concerning a startling occurrence or condition is admissible to prove the truth of the matter asserted therein, over a hearsay objection, if: (1) it concerns the occurrence or condition and (2) is made while the speaker is under the stress of the nervous excitement created by the perception.” Charles W. Gamble, Gamble’s Alabama Rules of Evidence § 803(2), Author’s Statement of the Rule (1995). See United States v. Rivera, 43 F.3d 1291 (9th Cir.1995)(statements made by rape victim were properly admitted under Rule 803(2), Fed.R.Evid., despite time lapse of 30 minutes between rape and statements because the victim was clearly still under stress or excitement of the rape); Ex parte Whisenhant, 555 So.2d 235 (Ala.1989). See also Dawson v. Commonwealth, 867 S.W.2d 493 (Ky.Ct.App.1993) (holding admissible victim’s statement to officer immediately after incident of domestic violence and holding inadmissible victim’s statement to another officer at a later time because of lack of spontaneity). Here, the statement was made as the victim, who had remained in the bedroom where she had been beaten, finally left the room to allow her mother and Officer *633 Blanchard entry to the apartment. She made the statement that her injuries had been inflicted by Johnson as she was still sobbing from the attack. Thus, her excited utterance, as an exception to the hearsay rule, supported the hearsay evidence, as did the audio recording. This was not a case where probation revocation was based solely on the testimony of the probation or arresting officer and/or an arrest report. There was enough evidence from which the court could be sufficiently satisfied that Johnson violated the terms of his probation by committing domestic violence.
As to Johnson’s claim that he was not given the opportunity to be heard, he did not object on this ground at the hearing; therefore this matter is not preserved.[8] “ ‘Even constitutional issues must be properly preserved for appellate review. Brown v. State, 705 So.2d 871, 875 (Ala.Crim.App.1997).’ ” Smith v. State, 857 So.2d 838, 840 (Ala.Crim.App.2002), quoting Evans v. State, 794 So.2d 1234 (Ala.Crim.App.2000).
‘““The general rules of preservation apply to probation revocation hearings. Puckett v. State, 680 So.2d 980, 983 (Ala.Crim.App.1996), citing Taylor v. State, 600 So.2d 1080, 1081 (Ala.Crim.App.1992). This Court ‘has recognized, in probation revocation proceedings, only two exceptions to the general rule that issues not presented to the trial court are waived on appeal: (1) the requirement that there be an adequate written order of revocation ..., and (2) the requirement that a revocation hearing actually be held.’ Puckett, 680 So.2d at 983.’”
“Bauer v. State, 891 So.2d 1004, 1006 (Ala.Crim.App.2004) (quoting Owens v. State, 728 So.2d 673, 680 (Ala.Crim.App.1998)). This court has also recognized a third exception that a defendant can raise for the first time on appeal — the requirement that the court advise the defendant of his or her right to request an attorney to represent the defendant during probation-revocation proceedings. See Law v. State, 778 So.2d 249, 250 (Ala.Crim.App.2000). A fourth exception to the preservation rule recently announced by our Supreme Court also allows a defendant to raise for the first time on appeal the allegation that the circuit court erred in failing to appoint counsel to represent the defendant during probation-revocation proceedings. See Dean v. State, 57 So.3d 169 (Ala.2010).”
Saffold, v. State, 77 So.3d 178, 179 (Ala.Crim.App.2011). See also Jackson v. State, 867 So.2d 365, 366 (Ala.Crim.App.2003) (holding that Jackson’s claim that the trial judge did not address him personally at the probation revocation hearing prior to accepting his admission was not preserved).
Based on the foregoing, the revocation of Johnson’s probation is due to be affirmed.
AFFIRMED.
WINDOM, P.J., concurs. KELLUM and JOINER, JJ., concur in the result. WELCH, J., dissents, with opinion.

. There were two charges of domestic violence, each involving a different victim; however the evidence introduced at the hearing concerned one of the victims, Tempest Johnson. Neither victim was present.

. The victim later informed Officer Blanchard that Johnson was wearing a black tank top and blue-jean shorts.

. On cross-examination, Magnus admitted that the pin number could have been shared with some unknown inmate who also happened to know Tempest Johnson.

. It is unclear whether the witness meant criminal history in general or specifically a history of domestic violence.

. Officer Webster subsequently testified that she had spoken to the victim twice on the phone. (R. 63.)

. The audio recording and another copy of the recording were admitted as State's Exhibit 1 and, upon inspection, they indicate that Johnson attempted to induce the victim to go to the officer, whose name he provided, and tell him that her claims were bogus or were made according to her mother or her girlfriends, and that in return he would owe her forever and love her forever. He also in *631 structed her to write a letter to the judge telling him that the charges were untrue.

. After the court revoked Johnson’s probation, defense counsel was allowed to examine Officer Webster again, and she testified that she had spoken to Johnson on at least a monthly basis and often on the telephone. She speculated that she had spoken to him 25 to 30 times. She affirmed that she knew that Johnson was speaking to the victim, Tempest Johnson, on the recorded calls. Officer Webster also testified that she had spoken to the other victim, Johnson’s cousin, by telephone just before the court’s ruling and that victim had stated that she would not testify because Johnson's mother had offered her money for her medical bills not to testify.

. Although Johnson did not fully address the court, he did deny having committing the offenses to the judge at the end of the hearing.